944 P.2d 83

PANCAKES OF HAWAII, INC., a Hawai'i corporation, dba Maui Original Pancakes & Steak House, Plaintiff/Counterclaim Defendant,

v.

POMARE PROPERTIES CORPORATION, a Hawai'i corporation, Defendant/Counterclaimant Cross–Claim Defendant–Appellant,

Sofos Realty Corporation, a Hawai'i corporation, and Lee Carter, Defendants/Cross–Claim Plaintiffs–Appellees.

No. 19370.

Intermediate Court of Appeals of Hawai'i.

July 31, 1997.

Jerry M. Hiatt, Carl H. Osaki, and Mahilani E. Kellett (Bays, Deaver, Hiatt, Lung & Rose, of counsel), on the brief, Honolulu, for defendant/counter-claimant/cross-claim defendant-appellant.

William S. Miller, Margaret J. Leong and Richard H.S. Sing (Goodsill Anderson Quinn & Stifel, of counsel), on the brief, Honolulu, for defendant/cross-claim plaintiffs-appellees Sofos Realty Corporation and Lee Carter.

BURNS, C.J., and KIRIMITSU, J., and Circuit Judge MARKS in Place of WATANABE, J., Recused.

KIRIMITSU, Judge.

In this contractual indemnity and attorney's fees and costs case, Defendant/Counterclaimant/Cross–Claim Defendant–Appellant Pomare Properties Corporation, a Hawai'i corporation (Pomare Properties), appeals from the Second Circuit Court's October 31, 1995 judgment. The relevant portion of the judgment granted summary judgment on Pomare Properties' duty to defend in favor of Defendants/Cross–Claim Plaintiffs–Appellees Sofos Realty Corporation, a Hawai'i corporation, and Lee Carter (Carter) (collectively, Sofos), denied Pomare Properties' motion for reconsideration, and ordered Pomare Properties to pay one-half of Sofos' attorney's fees and costs. We hold that: (1) summary judgment was proper because (a) Pomare Properties had a duty to defend Sofos under a contractual defense and indemnity provision, and (b) Sofos has standing to pursue its cross-claim against Pomare Properties; (2) the trial court did not abuse its discretion when it denied Pomare Properties' motion for reconsideration when Pomare Properties failed to produce a fully executed settlement agreement to demonstrate that its duty to defend should be extinguished; and (3) the

trial court did not abuse its discretion when it held Pomare Properties liable for $29,390.96 in attorney's fees and costs. Thus, we affirm that part of the October 31, 1995 judgment pertaining to Pomare Properties.[1]

## I. *BACKGROUND*

This controversy revolves around the Lahaina Shopping Center in Lahaina, Maui. The center was designed and developed by the 3900 Corporation, which leased the center to James Romig (Romig). Romig subsequently hired Pomare Properties as the managing agent of the center. Pomare Properties in turn signed a management and leasing agreement (the management agreement) with Sofos to handle managing and leasing duties. (Carter was a real estate salesman working for Sofos.) Sofos, however, did not make any final decisions regarding the leases or their terms and did not sign the agreements as either landlord or agent. Pomare Properties made all final decisions and signed the shopping center leases.

In the spring of 1990, Sofos began actively recruiting potential tenants for the shopping center as a part of the leasing program. One of their targets was Pancakes of Hawaii, Inc. (Pancakes), which, at the time, owned and operated two profitable restaurants in Honolulu. Carter contacted Young Acopan, the president of Pancakes, and began discussions about Pancakes opening a third restaurant in the shopping center. According to Pancakes, Carter made glowing representations about the success of the leasing program and the potential for Pancakes to thrive in the new center. He allegedly told Pancakes that he was either in the process of signing up enough tenants that would soon make the center reach an eighty to eighty-five percent occupancy level, or that he expected the center to have an eighty to eighty-five percent occupancy level at some point in the future.

After three months of negotiations and after having its attorney review the proposed

---

1. The October 31, 1995 judgment includes elements that are the subject of a related appeal by Plaintiff Pancakes of Hawaii, Inc. (Pancakes) that is currently pending before this court (No. 19395). Our holding in this appeal does not affect the ultimate disposition of the issues in appeal No. 19395.

lease agreement, Pancakes entered into a lease agreement with Pomare Properties on June 27, 1990. Pancakes subsequently built a restaurant in the shopping center and opened its doors in September 1991. Unfortunately, the inability of the center to lease more than thirty-five percent of its space and the lack of foot traffic through the mall resulted in huge financial losses for Pancakes. Unable to sustain the losses, Pancakes closed its doors on December 7, 1991.

On December 31, 1991, Pancakes sued Romig, Pomare Properties, and Sofos. The suit alleged fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing against all defendants, and professional negligence against Sofos. The complaint was amended on February 28, 1994. The first amended complaint added claims of intentional and/or negligent misrepresentation against all defendants and breach of contract against Romig and Pomare Properties.

On February 26, 1992, after Pancakes' initial complaint was filed, Sofos tendered the defense of the action to Pomare Properties based on a Responsibility Clause in the management agreement.[2] When Pomare Properties rejected the contractual indemnity demand, Sofos filed a March 23, 1992 cross-claim against Pomare Properties seeking to compel Pomare Properties to honor the Responsibility Clause.

Three years later, Sofos filed a motion for summary judgment on its cross-claim. During the February 23, 1995 hearing on the motion, Sofos argued that it was seeking a declaration that Pomare Properties had a duty to defend Sofos, and that the duty to indemnify, if any, should be determined at the conclusion of litigation. As the following excerpt from the trial court's March 31, 1995 order explains, the trial court agreed and granted the motion in part, ordering Pomare Properties to defend Sofos in the Pancakes litigation, but deferring a decision on the payment of past attorney's fees and costs:

1. Pomare Properties has a duty, under its Commercial Property Management and Leasing Agreement with Sofos Realty Corporation dated February 28, 1990, to defend the Sofos Realty Defendants against all claims against the Sofos Realty Defendants in this lawsuit.

. . . .

2. Pomare Properties shall assume the defense of the Sofos Realty Defendants in this lawsuit, effective February 23, 1995;

3. Pomare Properties shall be liable for one-half of all attorneys' fees and costs incurred by the Sofos Realty Defendants in this lawsuit on or after February 23, 1995.

IT IS FURTHER ORDERED THAT:

1. Pomare Properties and the Sofos Realty Defendants shall submit supplemental memoranda to the Court on the *limited issue* of whether Pomare Properties shall also be liable for one-half of the attorneys' fees and costs incurred by the Sofos Realty Defendants in this lawsuit before February 23, 1995;

2. Said supplemental memoranda shall be filed with the Court and served on other counsel on or before March 9, 1995;

3. The Court will render a separate decision regarding this issue at a later date.

---

**2.** This portion of the management agreement contains a clause (the Responsibility Clause) requiring, among other things, Defendant/Counterclaimant/Cross–Claim Defendant–Appellant Pomare Properties Corporation's, a Hawai'i corporation (Pomare Properties), prior approval for actions taken pursuant to the lease and Pomare Properties' defense of and indemnity to Defendants/Cross–Claim Plaintiffs–Appellees Sofos Realty Corporation, a Hawai'i corporation, and Lee Carter (collectively, Sofos) for actions not involving willful misconduct or gross negligence:

Any actions taken by [Sofos] pursuant to the terms of this Agreement shall be done as agent of [Pomare Properties] and all obligations or expenses incurred hereunder will be for the account, on behalf of and at the expense of [Pomare Properties], with [Pomare Properties'] prior review and approval.

Further, except for the willful misconduct or gross negligence of [Sofos], [Pomare Properties] shall indemnify, defend and hold [Sofos] harmless from and against any and all claims, demands, losses, liabilities and damages of every kind and nature arising from any cause whatsoever when [Sofos] is acting under this Agreement or the instructions of [Pomare Properties] or its designated representative. . . .

On July 19, 1995, the court rendered its decision on the attorney's fees and costs issue. It determined that Pomare Properties was liable for one-half of reasonable attorney's fees and costs incurred by Sofos beginning on February 27, 1992, which was the day after Sofos tendered its defense to Pomare Properties. The court later concluded that Sofos incurred reasonable attorney's fees and costs of $58,781.92 and ordered Pomare Properties to pay one-half of that amount ($29,390.96).

In the meantime, Pancakes and Pomare Properties reached a settlement agreement that dismissed all claims except the fraud and misrepresentation claims against Sofos. On July 31, 1995, Pomare Properties filed a motion for reconsideration of the summary judgment order based on the settlement agreement. It argued that because the only remaining issues after the settlement agreement involved willful misconduct (fraud and failure to disclose), which were not covered by the Responsibility Clause, it no longer had a duty to defend Sofos. But Pomare Properties submitted an affidavit and two pages of the settlement agreement, rather than a complete copy of the fully executed agreement. After a September 25, 1995 hearing, the trial court denied the motion, reasoning that there were "too many [unanswered] questions" to extinguish Pomare Properties' duty to defend. The order denying the motion was entered on October 12, 1995.

On February 6, 1995, Sofos filed a motion for summary judgment on Pancakes' first amended complaint. In the motion and subsequent hearing, Sofos argued that all of the representations allegedly made by Carter about occupancy rates and the leasing program were all predictions or opinions about future events. Sofos additionally argued that any statements made by Carter were barred by an integration clause in the lease agreement between Pancakes and Pomare Properties. The trial court agreed and granted the motion on May 22, 1995. On October 31, 1995, the trial court filed its judgment disposing of the cross-claim summary judgment motion, the motion for reconsideration, the

attorney's fees and costs issue, and Sofos' motion for summary judgment against Pancakes.[3] Pomare Properties filed a timely notice of appeal on November 2, 1995 and amended the notice of appeal on November 6, 1995.

## II. *DISCUSSION*

Pomare Properties argues three points of error on appeal: (1) the trial court erred in granting summary judgment in favor of Sofos; (2) the trial court erred in denying the motion for reconsideration because it did not take into consideration the impact of the settlement agreement on Pomare Properties' indemnification obligation; and (3) the trial court erred when it determined that Sofos had reasonably incurred $58,781.92 in attorney's fees and costs. Each argument is addressed in order.

### A. *Summary Judgment*

Pomare Properties makes five arguments to support its summary judgment point of error: (1) the trial court erred in determining that the Responsibility Clause should act as an insurance contract rather than a contract of indemnity; (2) there is a genuine issue of material fact concerning whether Sofos acted within the scope of the management agreement; (3) Sofos did not meet its burden of proof on the motion for summary judgment; (4) the management agreement must be strictly construed against Sofos; and (5) Sofos does not have standing to assert a claim for reimbursement of attorney's fees and costs under the Responsibility Clause. The second, third, and fourth arguments all turn on the issue of when the duty to defend arises in indemnity contracts (Pomare Properties' first argument). We believe our holding on that issue adequately disposes of Pomare Properties' second, third, and fourth arguments. *See infra* note 6. Consequently, after addressing the standard of review, we only discuss the indemnity and standing arguments.

**3.** Pancakes filed a notice of appeal from the October 31, 1995 judgment. That appeal is cur-

rently pending before this court. *See supra* note 1.

*1. Standard of review.*

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Higa v. Lino,* 82 Hawai'i 535, 537, 923 P.2d 952, 954 (App.) (quoting *Iddings v. Mee–Lee,* 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996) (citation omitted) (internal quotation marks omitted)), *cert. denied,* 83 Hawai'i 204, 925 P.2d 374 (1996). In addition, "[t]he evidence is viewed in the light most favorable to the non-moving party." *State for Use & Benefit of Ameron, Inc. v. Tradewinds Elec. Serv. & Contracting Inc.,* 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995) (citing *Board of Directors of Ass'n of Apartment Owners v. United Pac. Ins. Co.,* 77 Hawai'i 358, 360, 884 P.2d 1134, 1136 (1994)).

*2. Pomare Properties had a duty to defend Sofos under the Responsibility Clause.*

Pomare Properties argues that insurance cases, holding that the duty to defend in the insurance context is broader than the duty to indemnify, should not be extended to contractual indemnity clauses. We disagree.

*a. The duty to defend must be determined by the complaint allegation rule.*

■ The law governing the duty to defend in insurance cases is well settled. The duty to defend is fairly broad and separate and distinct from the duty to indemnify.

As provided in an insurance contract, the duty to defend is much broader than the duty to pay claims. *Commerce & Indus. Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 326, 832 P.2d 733, 735 (1992). The duty arises whenever there is a potential for indemnification liability of the insurer to the insured. "Furthermore, 'where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.'" *Id.* at 327, 832 P.2d at 736 (quoting *First Ins. Co. of Hawaii v. State,* 66 Haw. 413, 417, 665 P.2d 648, 652 (1983)). *Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co.,* 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994); *accord First Ins. Co. of Hawaii, Inc. v. State,* 66 Haw. 413, 417, 665 P.2d 648, 652 (1983) (holding insurer's duty to defend is broader than duty to indemnify).

■ In other words, "[t]he duty to defend is limited to situations where the pleadings have alleged claims for relief [that] fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'" *Hawaiian Holiday Macadamia Nut Co.,* 76 Hawai'i at 169, 872 P.2d at 233 (quoting *Hawaiian Ins. & Guar. Co. v. Blair, Ltd.,* 6 Haw.App. 447, 449, 726 P.2d 1310, 1312 (1986)) (internal quotation marks and citations omitted). Texas refers to this principle as the "complaint allegation rule." *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997).

■ Hawai'i has not yet expanded the insurer's duty to defend based on the complaint allegation rule to non-insurance indemnity contracts. And Pomare Properties argues that we should not adopt the duty to defend rationale from Hawai'i's insurance cases simply because they involve insurance policies and not general indemnity contracts. Sofos, on the other hand, contends that the same principles should apply to non-insurance indemnity contracts because if the duty to defend was determined only after the ultimate issue of liability on each claim has been made, the case "would be fully resolved before the duty [to defend] was triggered, and there would be nothing left to defend." We agree with Sofos.

We can discern no logical reason why the duty to defend based on indemnity contracts

should not follow the same philosophy used in the insurance context. An unadulterated line of reasoning leads directly from the insurance cases to the case at hand. The duty to defend, to have any effect at all, must be determined when the complaint is filed. Otherwise, an indemnitor can simply refuse to tender a defense whenever a suit alleges claims that are not covered by the indemnity provision. This kind of result would defeat the purpose of a duty to defend provision by forcing the indemnitee to shoulder the entire cost of defending suits that raise the potential for indemnification.

In our opinion, the procedure used to determine the duty to defend based on indemnity contracts can follow the same procedure used in the insurance context. If a complaint alleges claims that fall within the coverage of the indemnity provision, then, according to the complaint allegation rule, the duty to defend begins. This is separate and distinct from the duty to indemnify. Once the trier of fact makes a determination on the claims in the lawsuit, the duty to indemnify will either arise or lie dormant. Claims falling within the indemnity provision will trigger the duty to indemnify, while claims falling outside the provision will relieve the indemnitor of his or her duty to indemnify. In our view, this is the only equitable interpretation that gives life to non-insurance indemnity clauses and prevents indemnitors from benumbing the duty to defend until after a case has been litigated.

A number of jurisdictions have freely imported the common law reasoning from insurance cases to contractual indemnity cases. *See, e.g., Hillman v. Leland E. Burns, Inc.,* 209 Cal.App.3d 860, 257 Cal.Rptr. 535 (Cal. Ct.App.1989) (in dispute between contractor and architect, failing to determine duty to defend when claim is filed would lead to absurd result); *Herson v. New Boston Garden Corp.,* 40 Mass.App.Ct. 779, 667 N.E.2d 907 (duty to defend based on contractual indemnity provision broader than duty to indemnify), *review denied,* 423 Mass. 1108, 671 N.E.2d 951 (1996); *W. Lyman Case & Co. v. National City Corp.,* 76 Ohio St.3d 345, 667 N.E.2d 978 (1996) (using insurance case law to apply broad duty to defend in dispute

between corporation and seller of stock); *Knipschield v. C–J Recreation, Inc.,* 74 Wash.App. 212, 872 P.2d 1102 (1994) (duty to defend in tort cases arises at the time of the tender of defense). Both fairness and common sense dictate that we follow the trend embodied in the preceding cases. Accordingly, we hold that the duty to defend based on a contractual indemnity clause must be determined at the onset of litigation using the complaint allegation rule.

b. *The complaint allegation rule triggered Pomare Properties' duty to defend Sofos.*

Because Pomare Properties' duty to defend was contractual in nature, we must look to the language of the contract to determine the scope of that duty. *See Hawaiian Holiday Macadamia Nut Co.,* 76 Hawai'i at 169, 872 P.2d at 233 (citing *Commerce & Indus. Ins. Co.,* 73 Haw. at 325, 832 P.2d at 735) (citations omitted).

The pertinent portion of the Responsibility Clause explains that

except for the willful misconduct or gross negligence of [Sofos], [Pomare Properties] shall indemnify, defend and hold [Sofos] harmless from and against any and all claims, demands, losses, liabilities and damages of every kind and nature arising from any cause whatsoever when [Sofos] is acting under this Agreement or the instructions of [Pomare Properties] or its designated representative....

*See supra* note 2. Thus, Pomare Properties had a duty to defend Sofos against any claim that arose while Sofos was acting under the management agreement or under the instructions of Pomare Properties or its designated representative. Reconciling the Responsibility Clause with the complaint allegation rule, Pancakes' complaint against Sofos must have (1) alleged a claim that did not involve willful misconduct or gross negligence, and (2) potentially showed that Sofos was acting under the management agreement.

Before deciding whether or not Pancakes asserted claims that did not involve willful misconduct or gross negligence, it is fruitful to set out the commonly accepted definitions

of those phrases. "Willful" is defined as "deliberate, voluntary, or intentional. . . ." *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1634 (1989). "A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently. A willful act differs essentially from a negligent act. The one is positive and the other negative." *Black's Law Dictionary* 1599 (6th ed. 1990); *accord Iddings,* 82 Hawai'i at 7, 919 P.2d at 269.

Gross negligence, on the other hand, is a step below willful misconduct. In a dissenting opinion in the *Iddings* case, Justice Ramil quotes a commonly accepted definition of gross negligence:

> [Gross negligence includes i]ndifference to [a] present legal duty and . . . utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of [a] legal duty respecting the rights of others. The element of culpability [that] characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount[ ] of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than willful, wanton and reckless conduct.

*Id.* at 23, 919 P.2d at 285 (Ramil, J., dissenting) (quoting *Altman v. Aronson,* 231 Mass. 588, 121 N.E. 505, 506 (1919)). In addition, as the definitions of both phrases illustrate, neither willful misconduct nor gross negligence are synonymous with ordinary negligence.

The December 31, 1991 initial complaint filed by Pancakes against Sofos includes three claims that do not allege intentional misconduct or gross negligence. They include negligent misrepresentation, professional negligence, and breach of the covenant of good faith and fair dealing. Pancakes' February 28, 1994 amended complaint adds, among other things, the allegation of intentional, willful and/or negligent failure to disclose material information, and repeats the professional negligence and good faith and fair dealing claims.

Furthermore, it is clear that at least a portion of Sofos' conduct that involved the foregoing claims arose directly out of the management agreement. The relevant portion of the agreement explains some of the duties and responsibilities of Sofos:

> [Pomare Properties] hereby appoints [Sofos], and [Sofos] hereby accepts as the exclusive management and leasing agent of [Pomare Properties] for the property and building . . . commonly known as the Lahaina Center and the Lahaina Shopping Center, Lahaina, Maui. . . .
>
> . . . .
>
> [Sofos] shall maintain the public areas in accordance with standards reasonably expeditiously and professionally.
>
> . . . .
>
> [Sofos] shall negotiate contracts for required services, including trash removal, fire equipment, building equipment, air conditioning, security and other contract services, in the same name of [Pomare Properties] and subject to the approval of [Pomare Properties], all contracts to be signed by [Pomare Properties].
>
> . . . .
>
> [Sofos] shall provide recommendations to [Pomare Properties] and implement a marketing program for the Property intended to maintain high levels of occupancy at the highest rents achievable, consistent with market conditions and the agent condition and quality of the Property. [Sofos'] duties in regard to securing tenant leases shall be as follows:
>
> 1. Maintain a prospecting list.
>
> . . . .
>
> 3. Call prospects.
>
> 4. Develop an advertising program in accordance with [Pomare Properties'] requirements and projected vacancies. Print media advertising costs not exceeding $1,000 shall be paid by [Sofos]. Special advertising programs such as brochures, radio/TV ads, or display advertisements shall be paid by [Pomare Properties].
>
> . . . .

6. Prepare offers to Lease and submit to [Pomare Properties] with recommendations for acceptance, counter-offer or rejection. . . .

After reviewing the record, including the preceding excerpts from the management agreement, we are convinced that portions of the claims filed by Pancakes against Sofos arose from actions performed under the management agreement. For instance, the negligent misrepresentation claim in the initial complaint contends that Sofos negligently represented to Pancakes that its restaurant had good potential to succeed at the shopping center. The claim further alleges that Sofos negligently told Pancakes that the color brochure given to Pancakes would provide all of the relevant information about the shopping center. Both of the preceding allegations fall squarely within the confines of the management agreement. Sofos was required to call and recruit prospects, as well as develop an advertising program, including the brochures sent to Pancakes. The negligent misrepresentation claim, along with the professional negligence and breach of the covenant of good faith and fair dealing claims, all flow directly from Sofos' engagement in leasing activities.[4]

In reaching this conclusion, we are not persuaded by Pomare Properties' argument that questions of material fact remain on whether Sofos acted outside the scope of the management agreement. This argument merely states the obvious: if Sofos committed fraud then it was clearly acting outside the scope of the agreement. But our role and that of the trial court in determining the duty to defend under the terms of the management agreement is simply to determine whether any of the allegations in the complaint potentially include conduct that arose under the management agreement. As the following excerpt from the Sofos summary judgment hearing reveals, the trial court recognized this distinction:

[POMARE]: . . . [Sofos has] a burden on a motion for summary judgment to come forward and say that the representations and conversations which took place in order to get this were at our instruction or designated representative's instruction or under the agreement. And they weren't.

We've got an affidavit uncontradicted saying that we didn't instruct them to have this meeting. Uncontradicted.

THE COURT: Isn't the complaint though, the allegation that they were?

[POMARE]: No, there's no allegation in the complaint that we were act—that the agent was acting at our instructions.

THE COURT: No, were they acting under the agreement[?]

[POMARE]: No, I mean, I mean—

THE COURT: What were they acting under if they weren't acting under the agreement?

[POMARE]: I mean they were acting on their own like some cowboy is going out there and saying let's say what we need to say in order to lease some of this space so we can get our commission. I mean, you know, I could hire Mr.—him as my lawyer and he could do things that are far beyond the scope of [sic] the what I told him to do. It wouldn't be under the agreement. You know, there comes a point where—[5]

---

4. The amended complaint repeats allegations that, if true, include conduct by Sofos that arose from leasing activities that were in compliance with the management agreement.

5. Later, during the September 25, 1995 telephone hearing on Pomare Properties' motion for reconsideration, Pomare Properties acknowledged the frailty of its contention that all of Sofos' actions were outside the scope of the management agreement:

[POMARE]: Unless that ruling is reversed, and I think under the facts that you just gave us, that doesn't seem to be the only ruling that's going to be reversed if [sic]. They find no

fraud there was [sic] two other bases to our objection to the duty to pay fees, and the other basis was that Mister—that Sofos was acting outside the court's scope of the contract with Pomare because they shouldn't be making any representations to this lady and I suppose that still (inaudible).

*Can I be frank with everybody on the phone? I don't see a great shot on appeal for us on that. Though our client has asked us to make the argument, you know. But so probably that's the most likely result, but we'll have to see.*
(Emphasis added.)

THE COURT: I agree that's a factual issue that someday will have to be determined, but for the purposes of whether or not they have a duty to defend and [sic] under this responsibility clause it seems to me that [Sofos'] argument that all [it] has to show is that there is a charge, a complaint, an allegation that they acted negligently or in some way to—under this agreement to give rise to this responsibility claim is all they've got to do is no matter what the facts are that might contradict the fact that they were acting under the agreement or that they were acting without—with or without gross negligence, et cetera, regardless of all of that, before we get to that issue, looking at the issue of whether or not there's an allegation against one of the parties to this leasing agreement and whether because of that allegation this responsibility clause kicks in.

We agree. Accordingly, we hold that Pomare Properties' duty to defend Sofos arose when Pancakes filed its initial complaint because (1) Pancakes made claims that did not involve willful misconduct or gross negligence and (2) portions of Sofos' alleged conduct were unquestionably leasing activities that fell within the parameters of the management agreement. Thus, the trial court correctly determined that there were no genuine issues of material fact involving Pomare Properties' duty to defend Sofos.

### 3. *Sofos has standing to enforce the duty to defend provision.*

 Pomare Properties contends that Sofos lacks standing because Sofos' attorney's fees and costs are being paid by its insurance company, Home Insurance, and thus Home Insurance, not Sofos, is the real party in interest. We disagree.

Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he [or she] wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' to warrant his [or her] invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his [or her] behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *Hawaii's Thousand Friends v. Anderson,* 70 Haw. 276, 281–82, 768 P.2d 1293, 1298 (1989) (quoting *Life of the Land v. Land Use Comm'n,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981)) (emphasis deleted) (first, second, and fourth brackets added).

Hawai'i uses a three-part test to determine whether a party has a sufficient personal stake in the outcome of a case. Under this test, the plaintiff or injured party must show that: "(1) he or she has suffered an actual or threatened injury as a result of the defendant's wrongful conduct, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision would likely provide relief for [the] plaintiff's injury." *Bush v. Watson,* 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996) (citing *Pele Defense Fund v. Paty,* 73 Haw. 578, 594, 837 P.2d 1247, 1258 (1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993)); *accord Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2135–37, 119 L.Ed.2d 351 (1992) (discussing standing elements in federal cases).

Concerning the first element, Sofos did in fact suffer an actual injury as a result of Pomare Properties' wrongful conduct. Sofos tendered the defense of Pancakes' suit on February 26, 1992. The tender was based on a valid Responsibility Clause in the management agreement. As we previously held, the complaint allegation rule was satisfied and hence Pomare Properties' duty to defend arose when tender was made. And when Pomare Properties rejected tender, Sofos suffered an actual injury by having to pay for its own defense and pursue a cross-claim against Pomare Properties seeking to compel Pomare Properties to honor the Responsibility Clause. *See Akau v. Olohana Corp.,* 65 Haw. 383, 389, 652 P.2d 1130, 1135 (1982) (citations omitted) ("Injury in fact has always included harm to economic interests.").

In our view, the fact that Sofos has an insurance carrier is irrelevant. The record does not clearly reveal that Sofos had requested or that Home Insurance had agreed to defend Sofos at the time the duty to

defend arose. Even if Sofos had made such a request, an insured is never assured that his or her claim will be accepted by the insurer. In any event, if Pomare Properties had accepted its responsibility to defend Sofos when the defense was tendered, Sofos would not have had to seek assistance from Home Insurance and risk, among other things, an increase in insurance premiums. Moreover, we refuse to use hindsight to determine when Home Insurance arrived on the scene or how much it contributed to Sofos' defense.

Sofos easily satisfies the second and third elements of the standing test. Sofos' injury is more than fairly traceable to Pomare Properties' actions. Sofos had to pay for its own defense because Pomare Properties refused to honor its duty to defend. Additionally, a favorable decision would likely provide relief for Sofos' injury, as it would require Pomare Properties to not only assume its duty to defend, but compel the reimbursement of attorney's fees and costs already expended defending against the Pancakes lawsuit. Therefore, we hold that Sofos has standing to pursue its cross-claim for reimbursement of attorney's fees and costs.

■ There being no genuine issues of material fact involving Pomare Properties' duty to defend or Sofos' standing to pursue its cross-claim, we hold that the trial court

correctly determined that Sofos was entitled to a judgment as a matter of law.[6]

### B. Motion For Reconsideration

Pomare Properties' motion for reconsideration urged the trial court to revise its summary judgment order to reflect a settlement agreement between Pomare Properties and Pancakes, which resolved all claims except fraud. We address the merits of this argument after explaining the standard of review.

#### 1. Standard of review.

■ Motions for reconsideration are reviewed for abuse of discretion. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26–27 (1992) (citing *Gossinger v. Association of Apartment Owners of the Regency Ala Wai*, 73 Haw. 412, 425, 835 P.2d 627, 634 (1992) (citation omitted)). "An 'abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.'" *State v. Jackson*, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996) (quoting *State v. Adams*, 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994) (citing *Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 26)).

■ The purpose of a motion for reconsideration is not to simply relitigate old matters, but to allow the parties to present new

---

6. Pomare Properties' other arguments on this issue—that Sofos did not meet its burden of proof and that the management agreement must be strictly construed against Sofos—are simply not credible. As we previously held, there were no genuine issues of material fact concerning the duty to defend. Because there were no genuine material factual issues remaining, strictly construing the agreement against Sofos would not change the outcome of our holding. Furthermore, as the Hawai'i Supreme Court explained in 1992, we do not construe an agreement or provision against the drafter where there is only one reasonable construction and there are two parties of equal sophistication and equal bargaining power. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 110 n. 5, 839 P.2d 10, 25 n. 5 (1992). In our case, there is only one reasonable construction, Pomare Properties and Sofos are of equal sophistication, and the record reveals that they bargained over the terms of the management agreement on equal footing.

We further acknowledge the rule of reasonable construction. According to this rule, when

the language of the contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men [or women] would naturally execute, while the other makes it inequitable, unusual or such as reasonable men [or women] would not be likely to enter into, the interpretation [that] makes it a rational and probable agreement must be preferred. *Hawaiian Pineapple Co. v. Masamari Saito*, 24 Haw. 787, 799, (1918) (citing *A. Leschen & Sons Rope Co. v. Mayflower Gold Mining, Etc., Co.*, 173 F. 855 (1909)); *accord Kaiser Hawaii Kai Dev. Co. v. Murray*, 49 Haw. 214, 228, 412 P.2d 925, 932 (1966). Although the Responsibility Clause is clear on its face and thus not susceptible to two constructions, we nonetheless conclude that, regardless of any other possible interpretations, our construction of the clause is the only fair and reasonable way to construe the Responsibility Clause.

evidence or make fresh arguments that could not have been presented or made in the earlier proceeding. *Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 27 (citing *Gossinger*, 73 Haw. at 426, 835 P.2d at 634–35); *Briggs v. Hotel Corp. of the Pac., Inc.*, 73 Haw. 276, 287 n. 7, 831 P.2d 1335, 1342 n. 7 (1992).

2. *The trial court did not abuse its discretion when it refused to accept an affidavit and two pages of a ten-page settlement agreement as conclusive proof that an agreement had been reached.*

Pomare Properties argues that the settlement agreement reached with Pancakes relieved Pomare Properties of its obligations under the Responsibility Clause and that the trial court failed to consider how the settlement agreement affected its duty to defend. We disagree.

According to an affidavit enclosed with Pomare Properties' motion for reconsideration, a settlement agreement was reached on July 14, 1995. In the agreement, Pancakes settled all claims with Pomare Properties and agreed to dismiss all claims, with prejudice, except for any fraud alleged against Sofos. After Sofos complained about the lack of evidence indicating a settlement agreement had been reached, Pomare Properties filed a supplemental memorandum on September 20, 1995. Enclosed with this memorandum were two pages of a purported ten-page settlement agreement. Paragraph ten of the agreement supported the claims made in Pomare Properties' initial affidavit:

10. *Dismissal with Prejudice.* All claims between Pomare Properties and Pancakes in the Pancakes Lawsuit shall be dismissed with prejudice, by means of a stipulation. Each party shall bear their own costs, expenses and attorneys' fees. Pancakes shall also dismiss with prejudice all claims against the Sofos Parties, with the exception of a sole remaining claim against the Sofos Parties for the Sofos Parties' own actual, separate fraud (wherever plead [sic] in the Amended Complaint), which fraud the Settling Parties stipulate and agree is not covered by the Indemnity Agreement.

For reasons unknown, Pomare Properties never submitted a copy of the fully executed settlement agreement to the trial court.

Paragraph ten of the agreement had the net effect of extinguishing Pomare Properties' duty to defend Sofos in the Pancakes litigation. If the negligence and breach of the covenant of good faith and fair dealing claims were dismissed with prejudice, then the only remaining claims involved Sofos' alleged fraudulent misrepresentations and alleged fraudulent failure to disclose. Any allegations pursued by Pancakes would thus involve intentional misconduct, or in other words, conduct that falls outside the scope of the Responsibility Clause. Consequently, it would have been within the trial court's discretion to grant the motion for reconsideration and find that Pomare Properties had neither a duty to defend nor indemnify beginning on July 14, 1995.

The trial court, however, was not swayed by the piecemeal portions of the settlement agreement submitted by Pomare Properties. At the September 25, 1995 hearing on the motion, Pomare Properties asked the court to acknowledge the existence of the agreement, Sofos disputed that the agreement existed, and the trial court subsequently rejected Pomare Properties' argument:

[POMARE]: ... [Pancakes] is still pursuing the fraud claim on appeal, and our request of you is that you reconsider the [summary judgment] order insofar as it required Pomare to pay their attorneys' fees for that appeal because a claim of fraud, we believe, does not come within the indemnity....

....

[SOFOS]: Your Honor, we weren't part of any settlement with anybody, and the only thing that's attached to any other court documents is one or two pages from some sort of agreement between Pomare and the plaintiff. So we have no idea what the really [sic] effect of that is.

....

... There's nothing in the court's record, and I'm not satisfied with seeing a single page of who knows how long a settlement document to understand what actually is left in the case between you

and your—and [Pancakes]—between us and [Pancakes], which in my opinion is nothing. But we haven't seen your settlement agreement in its entirety, and we have no agreement with anybody about settlement.

. . . .

THE COURT: Well, this court is going to have to make a ruling on this particular motion. So I'm going to go ahead and make a ruling. I have a number of concerns presumably if we presume that the appeal has been taken properly; that there is [sic] been—well, I guess the final judgment has been extended until the ruling on this motion for reconsideration, if that's the case. We still have the question of what is the claim of fraud. Is there a claim of fraud, et cetera, and maybe the Supreme Court's going to have to make a decision, but if there's no claim of fraud, the indemnification should apply.

There are too many questions as far as this court's concerned to grant the motion for reconsideration at this time from [Pomare Properties]. So I'm going to deny this motion. I'm going to ask [Sofos] to prepare the order, just a simple order denying the motion, and hopefully all these jurisdictional questions will be resolved and the matter, when taken finally to the Supreme Court, can be heard on the merits of whether or not there was a claim for fraud.

But as I say, there's no clear indication that there's a claim for fraud. And I understand your position [Pomare Properties], but, hey, that's all that's left if there's anything. And so you guys shouldn't be responsible for it. I don't disagree with that, but if it's not, then somebody's got to pay for that defense.

And so right at this moment, I'm going to deny this motion.

By stating that it was unsure what claims remained in the litigation, the trial court was tacitly refusing to acknowledge that a settlement agreement had been reached. And we cannot say that the trial court abused its discretion when it refused to consider two pages of a purported settlement to be conclusive evidence that a settlement agreement had been reached. If an agreement was in fact reached, it was incumbent upon Pomare Properties to perform the rather simple task of enclosing the entire executed agreement with its motion for reconsideration. If a fully executed copy of the settlement agreement had been given to the trial court and Sofos with the motion for reconsideration, it may have provided the court with answers to questions about the remaining claims.[7]

The trial court did not clearly exceed the bounds of reason or disregard rules or principles of law when it refused to accept Pomare Properties' affidavit and portions of the settlement agreement. Thus, we hold that the trial court did not abuse its discretion when it denied the motion for reconsideration.

### C. *Attorney's Fees And Costs*

Pomare Properties' final argument challenges the reasonableness of the trial court's award of attorney's fees and costs to Sofos. We examine the merits of this argument after explaining the standard of review.

#### 1. *Standard of review.*

■ We review an award or denial of attorney's fees and costs for abuse of discretion. *Romero v. Hariri,* 80 Hawai'i 450, 459, 911 P.2d 85, 94 (App.1996) (citing *Weinberg v. Mauch,* 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–90 (1995)); *Bjornen v. State Farm Fire & Casualty Co.,* 81 Hawai'i 105, 107, 912 P.2d 602, 604 (App.1996) (citing *DeMund v. Lum,* 5 Haw.App. 336, 690 P.2d 1316 (1984)).

#### 2. *The trial court did not abuse its discretion when it determined the amount of attorney's fees and costs reasonably incurred by Sofos.*

■ Attorney's fees and costs are generally awarded only when provided by statute, stipulation, or agreement. *Romero,* 80 Hawai'i at 459, 911 P.2d at 94 (citing *Weinberg,* 78 Hawai'i at 53, 890 P.2d at 290

---

7. In its reply brief, Pomare Properties states in a footnote that "[i]n order to alleviate the Sofos Defendants' concerns related to the existence of the Settlement Agreement, Pomare has transmitted a fully executed copy of the Settlement Agreement to the Sofos Defendants' counsel for their information and reference." This, however, should have been done prior to the September 25, 1995 hearing on the motion for reconsideration.

(quoting *Utsunomiya Enter., Inc. v. Moomuku Country Club*, 76 Hawai'i 396, 399 n. 3, 879 P.2d 501, 504 n. 3 (1994))). In our case, the Responsibility Clause provided the trial court with the authority to make the award. *See supra* note 2. When Pomare Properties wrongfully refused tender, Sofos had to defend itself against the lawsuit filed by Pancakes. And in our view, the broad scope of the Responsibility Clause entitled Sofos to be compensated for the whole cost of the proceeding. As a result, Sofos was entitled to a reimbursement for all attorney's fees and costs associated with its defense in the Pancakes litigation. Additionally, given the broad nature of the Responsibility Clause, we are chiefly guided by the concept of reasonableness when reviewing the award. In other words, the trial court's award of attorney's fees and costs must have been reasonable. *Azer v. Myers*, 8 Haw.App. 86, 133, 793 P.2d 1189, 1216 (citing *Horst v. Horst*, 1 Haw.App. 617, 623 P.2d 1265 (1981)), *aff'd in part, rev'd in part on other grounds*, 71 Haw. 506, 795 P.2d 853 (1990).

█ Once the trial court determined that Pomare Properties had a duty to defend Sofos, it then held a hearing to determine the amount of attorney's fees and costs reasonably incurred by Sofos. After reviewing written motions on the issue and conducting the August 23, 1995 hearing, the trial court concluded that Sofos incurred reasonable attorney's fees and costs of $58,781.92. Rather than require Pomare Properties to pay the entire amount, however, the trial court ordered Pomare Properties to reimburse $29,390.96, or one-half of the amount expended by Sofos.[8]

█ On appeal, Pomare Properties specifically challenges the reasonableness of unseen correspondence,[9] paralegal work, travel arrangements, and excess travel to Maui. After reviewing the record, we conclude that all of the preceding costs are supported by copious billing records submitted to the trial court and constitute reasonably necessary expenses to defend a lawsuit. All of the expenses fall within the ambit of the "whole cost of the proceeding." Moreover, the trial court's one-half order, which amounted to a reduction in the amount that Sofos was actually entitled to, only adds to the reasonableness of the trial court's award.

In the final analysis, the question is one of abuse of discretion; and, if the amount of the fee allowed or awarded appears to the appellate court to be disproportionate to the extent of legal services normally required to be expended in a case of the nature of the one before the trial judge in which the fee was allowed or awarded, his [or her] allowance or award of a "reasonable" attorney's fee must then stand the scrutiny of the reviewing court on the record.

*Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 251, 413 P.2d 242, 248–49 (1966) (citing *Estate of Campbell*, 47 Haw. 216, 385 P.2d 828 (1963); *Estate of Holt*, 42 Haw. 612 (1958); *Lalakea v. Laupahoehoe Sugar Co.*, 35 Haw. 682, 685 (1940); *Lalakea v. Laupahoehoe Sugar Co.*, 35 Haw. 262, 305 (1939); *Valentin v. Brunette*, 26 Haw. 498 (1922); *Schlief v. Clark*, 14 Haw. 78, 79 (1902)).

We do not believe that the attorney's fees and costs awarded to Sofos were disproportionate to the extent of legal services normally required to be expended in a case of this nature, with multiple defendants, and countless depositions, motions, and hearings covering a three-year period. Consequently, we hold that the trial court did not abuse its discretion when it ordered Pomare Properties to pay $29,390.96 in attorney's fees and costs to Sofos.

### III. *CONCLUSION*

In sum, we hold that: (1) the duty to defend based on a contractual indemnity

---

8. Neither side has complained on appeal about the trial court's division of the attorney's fees and costs award. We therefore do not address the trial court's decision to hold Pomare Properties liable for one-half, rather than all, of the attorney's fees and costs incurred by Sofos.

9. Pomare Properties argues that it should not be responsible for $4,708.80 worth of correspondence that it was barred from examining by Sofos. Sofos argued below and argues now on appeal that the documents are either privileged or attorney work product. We hold that it was within the trial court's discretion to hold Pomare Properties responsible for the fees and costs associated with the documents if an examination would have violated the attorney-client privilege or disclosed attorney work product.

clause must be determined when a complaint is filed using the complaint allegation rule; (2) Pomare Properties' duty to defend arose when Pancakes filed its initial complaint against Sofos, and thus the trial court correctly found that there were no genuine issues of material fact; (3) Sofos has standing to enforce the Responsibility Clause; (4) in light of Pomare Properties' duty to defend and the fact that Sofos has standing, the trial court's grant of summary judgment was correct; (5) the trial court did not abuse its discretion when it denied the motion for reconsideration because it refused to accept an affidavit and portions of a settlement agreement as conclusive proof that a settlement had been reached; and (6) the trial court's award of attorney's fees and costs was not an abuse of discretion. Accordingly, we affirm that part of the October 31, 1995 judgment dealing with the Sofos motion for summary judgment against Pomare Properties, the Pomare Properties motion for reconsideration, and the award of attorney's fees and costs.