872 P.2d 230

HAWAIIAN HOLIDAY MACADAMIA NUT CO., INC., Paul DeDomenico and Anita DeDomenico and Roderick J. Saunders, Plaintiffs–Appellees,

v.

INDUSTRIAL INDEMNITY COMPANY, Industrial Insurance Company of Hawaii, Ltd., Defendants–Appellants,

and

John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10 and/or "non-profit" Corporations 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 16759.

Supreme Court of Hawai'i.

March 23, 1994.

As Amended April 21, 1994.

Arthur F. Roeca (Keith K. Hiraoka, with him on the briefs of Roeca, Louie & Hiraoka), Honolulu, for defendants-appellants.

David C. Schutter (Charles J. Ferrera, with him on the brief), Honolulu, for plaintiffs-appellees.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and WONG, Circuit Court Judge, in place of KLEIN, J., recused.

NAKAYAMA, Justice.

Defendants-appellants Industrial Indemnity Company and Industrial Insurance Company of Hawaii, Ltd. (collectively Industrial) appeal orders granting plaintiffs-appellees Hawaiian Holiday Macadamia Nut Company, Inc., (Nut Company) Paul DeDomenico, Anita DeDomenico and Roderick J. Saunder's (collectively Hawaiian Holiday) motion for summary judgment and denying Industrial's cross motion for summary judgment.

The trial court determined that Industrial had a duty to defend Hawaiian Holiday because the complaint which gave rise to the action alleged claims of property damage. However, because the complaint alleged causes of action for breach of contract, fraud, racketeering and misappropriation of assets and did not assert claims sounding in negligence, we disagree with the holding of the trial court, vacate the orders granting Hawaiian Holiday's motion for summary judgment and denying Industrial's motion for summary judgment and remand to the trial court for entry of judgment in favor of Industrial.

## I. BACKGROUND

The Nut Company is a Hawai'i corporation, wholly owned by Paul and Anita DeDomenico, which grows, processes, ships and retails macadamia nuts. Paul DeDomenico is the Nut Company's president and the chair of its board of directors. Anita DeDomenico is executive vice president and a director of the Nut Company. Roderick J. Saunders was, at the time, the Nut Company's vice president of finance.

The Nut Company entered into a business venture with two Texas-owned limited partnerships, Kohala Agriculture and Keaau Agriculture (the Dallas Plaintiffs), whereby the limited partnerships would provide the funds necessary to cultivate and harvest ma-

cadamia nuts and the alternating crops, alfalfa and tropical hay. Pursuant to the planting agreements which the Nut Company entered into with both Kohala Agriculture and Keaau Agriculture, the Nut Company was to lease property to the limited partnerships. The limited partnerships would then purchase macadamia nut seedlings from the Nut Company, and pay the Nut Company to plant and tend the seedlings, and harvest the macadamia nut crop. The Nut Company, thereafter, would purchase the harvested nuts from the limited partnerships.

Unfortunately, the venture did not progress as expected. On July 17, 1986, Kohala Agriculture and Keaau Agriculture filed a complaint in the United States District Court for the Northern District of Texas (Dallas litigation or Dallas complaint), alleging: (1) Hawaiian Holiday made fraudulent misrepresentations in soliciting the Dallas Plaintiffs' purchase of shares in the limited partnerships; (2) the Nut Company breached its farming contracts with the limited partnerships; and (3) the DeDomenicos and Saunders converted limited partnership assets to their own use. The complaint alleged the following claims for relief: (1) fraud; (2) fraud in the sale of securities; (3) racketeering; (4) breach of contract and (5) fraudulent conveyance and misappropriation of assets in violation of fiduciary duty such that the plaintiffs were entitled to a constructive trust. The Dallas Plaintiffs sought benefit of the bargain damages or, in the alternative, restitution or recovery of their money.

Industrial had issued three comprehensive general liability (CGL) insurance policies to the Nut Company and Paul and Anita DeDomenico, as named insureds, covering consecutive periods of time from February 15, 1982 through February 15, 1986. The policy provided, in pertinent part, coverage for property damage resulting from an "occurrence," or accident.

Hawaiian Holiday tendered the defense of the Dallas litigation to Industrial on August 10, 1986, which Industrial declined. Subsequently, Hawaiian Holiday filed suit against Industrial in the Circuit Court of the First Circuit, State of Hawai'i, alleging bad faith failure to defend.

Industrial moved for summary judgment, which the circuit court denied.

The circuit court granted Industrial's subsequent motion for leave to file an interlocutory appeal, reasoning that because: 1) the case involved substantial legal issues concerning insurance coverage that were questions of first impression in Hawai'i; 2) the financial cost to the parties would be great considering some of the parties and many of the lay and expert witnesses resided on the mainland; and 3) the trial would also tax the resources of the circuit court, a final determination by this court as to the extent of the coverage of the policy at issue would facilitate the speedy termination of the litigation. Meanwhile, Hawaiian Holiday filed a motion for summary judgment, which the circuit court granted, applying the same reasoning as it had in denying Industrial's motion. As it had done for Industrial, the circuit court granted Hawaiian Holiday's motion for leave to file an interlocutory appeal. Subsequently, we consolidated Industrial's and Hawaiian Holiday's interlocutory appeals—Nos. 14703 and 15140.

In a memorandum opinion filed on July 2, 1991, we affirmed the circuit court's denial of Industrial's motion for summary judgment and remanded with instructions. We found that contrary to Hawaiian Holiday's assertion, the claims made in the Dallas litigation were not specifically covered under the advertising injury coverage. 72 Haw. 604, 815 P.2d 27. However, we emphasized that the advertising injury was not the only issue upon which Hawaiian Holiday could possibly rely to obtain coverage. Because the three policies provided by Industrial contained many bases for coverage, and the factual allegations in the Dallas complaint were broadly stated, we remanded the case so that Hawaiian Holiday could particularize the specific allegations in the Dallas litigation upon which they were relying for coverage and the duty to defend.

On remand, Hawaiian Holiday filed a second motion for summary judgment, and Industrial also filed a second cross-motion for summary judgment. The circuit court granted summary judgment as to Industrial's duty

to defend in the Dallas litigation, concluding that the Dallas plaintiffs' complaint contained claims for property damage resulting from "occurrences" that raised a potential for indemnification liability and therefore a duty to defend under the terms of the insurance policy. Industrial's timely appeal followed.

Subsequently, on November 30, 1990, the Dallas plaintiffs and Hawaiian Holiday agreed to a settlement and mutual release of the claims asserted in the Dallas litigation.

## II. *STANDARD OF REVIEW*

■ The standard to be applied by the appellate court in reviewing a grant or denial of summary judgment is identical to that employed by the trial court. Summary judgment is proper when there are no genuine issues of material fact and the moving party demonstrated that it is entitled to judgment as a matter of law. *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993); *State v. Magoon*, 75 Haw. 164, 175, 858 P.2d 712, 718, *recon. denied*, 75 Haw. ——, 861 P.2d 735 (1993); HRCP Rule 56(c).

## III. *DISCUSSION*

■ Because the insurer's duty to defend its insured is contractual in nature, we must look to the language of the policy involved to determine the scope of that duty. *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 325, 832 P.2d 733, 735, *recon. denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

The policy at issue provides in pertinent part:

> The Company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of
>
> Coverage A—bodily injury,
>
> Coverage B—property damages to which this insurance applies, caused by an *occurrence*, and the Company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and set-
>
> tlement of any claim or suit as it deems expedient.... [Emphasis in original.]

Property damage is defined in the insurance policy as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period.... [Emphasis added.]

■ As provided in an insurance contract, the duty to defend is much broader than the duty to pay claims. *Commerce*, 73 Haw. at 326, 832 P.2d at 735. The duty arises whenever there is a potential for indemnification liability of the insurer to the insured. "Furthermore, 'where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.'" *Id.*, at 327, 832 P.2d at 736 (quoting *First Ins. Co. of Hawai'i v. State of Hawaii*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983)).

■ The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. "'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'" *Hawaiian Ins. & Guar. Co. v. Blair, Ltd.*, 6 Haw. App. 447, 449, 726 P.2d 1310, 1312 (1986) (citation omitted) (as quoted by *Commerce*, 73 Haw. at 327, 832 P.2d at 736).

■ In the present case, Industrial maintains that the Dallas complaint failed to assert a claim for property damage that would afford coverage under the terms of its policy, which covers general liability. Industrial, therefore, contends that it had no duty to defend Hawaiian Holiday in the Dallas litigation. The circuit court concluded to the contrary, relying on the above contractual provisions and on the following specific factual allegations of the Dallas complaint:

28. Hawaiian Holiday breached the Planting Agreement and the dictates of good husbandry insofar as it did perform the Agreement. Among those breaches were: the planting of 48 trees per acre where 96 trees per acre were required by the Planting Agreement and 70 per acre by Kohala Agriculture's lease of the Kohala property; the planting of ungrafted as well as grafted seedlings; the planting of immature seedlings; the planting of immature seedlings simultaneously with the planting of the grass crop so that *the grass crop, when it emerged, immediately encroached on and damaged or killed many of the seedlings;* and the planting of seedlings without the necessary fertilizer to insure proper growth.... [Emphasis added.]

29. So far, Kohala Agriculture has paid approximately $3.4 million to Hawaiian Holiday out of a total contract price of approximately $4 million for plowing, seeding, grafting and planting. It will cost not less than $2 million to complete Hawaiian Holiday's contracts to plow, seed, graft and plant the Kohala property.

The circuit court determined that the allegation that as a result of Hawaiian Holiday's breach of dictates of good husbandry, many macadamia nut seedlings were damaged or killed constituted a claim for property damage as defined in the insurance policy. Therefore, the circuit court concluded that Industrial had the duty to undertake Hawaiian Holiday's defense.

The determination of property damage is only one condition which would trigger coverage by Industrial. The policy also mandates that the property damage must be caused by an "occurrence."

An "occurrence" as defined in the policy is: an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.* [Emphasis in original.]

The question of what is an "accident" must be determined by addressing the question from the viewpoint of the insured. This court has addressed this question previously in *AIG Hawaii Insurance Co., Inc. v. Caraang:*

"[I]f the insured did something or ... failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not ... within the coverage of the policy ..." [*Hawaiian Ins. & Guar. Co. v.*] *Blanco,* 72 Haw. [9] at 16, 804 P.2d [876] at 880 [ (1990) ] (insured fired rifle in victim's direction, intending to frighten but instead injuring him; injury held to be reasonably foreseeable and therefore not accidental from insured's viewpoint; consequently, insurer had no duty to defend); *see also* [*Hawaiian Ins. & Guar. Co. v.*] *Brooks,* 67 Haw. [285] at 292, 686 P.2d [23] at 27–28 [ (1984) ] (from perspective of insured truck driver, sexual assault of hitchhiker in rear section of vehicle by insured's co-worker not accidental where insured aware of attack but chose not to do anything to prevent or mitigate harm to victim, thereby facilitating commission of act; insurer held to have no duty to defend or indemnify).

\*　　\*　　\*　　\*　　\*　　\*

The teaching of *Blanco* and *Brooks,* however, is that, in order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.

74 Haw. 620, 635–636, 851 P.2d 321, 329 (1993).

In the present case, the allegations of property damage which were asserted in the Dallas complaint were presented in the context of detailing the extent of the fraud and breach of contract perpetuated by Hawaiian Holiday. In paragraphs 28 and 29 of the Dallas complaint, the Dallas plaintiffs alleged breach of contract based on intentional acts performed by Hawaiian Holiday to defraud the Dallas plaintiffs. The complaint sought contractual relief in the form of benefit of the bargain damages and recovery for total expenditures under the contract. Hawaiian Holiday allegedly planted fewer trees than the parties had agreed to pursuant to the contract, purposely planted ungrafted trees

and immature seedlings contrary to the contract, and planted the seedlings and the grass simultaneously, again contrary to the contract. The simultaneous planting of the seedlings and grass allegedly resulted in a grass crop that encroached upon and killed many of the seedlings.

The Dallas plaintiffs' claim for relief arising out of the alleged destruction of the seedlings, therefore, did not sound in negligence such that a claim for "property damage," within the meaning of the comprehensive general liability policy could be supported. On the contrary, the alleged property damage, the killing of the seedlings, was part and parcel of the alleged acts committed by Hawaiian Holiday that resulted in the claims for breach of contract and fraud.

Because the conduct alleged was not accidental, it does not constitute an "occurrence" within the meaning of the CGL policy. Not being an "occurrence," the resulting destruction of seedlings does not constitute "property damage" within the meaning of the policy.

The Dallas plaintiffs confined their claims for relief to claims for causes of action for breach of contract and fraud. These claims are not negligence claims resulting from accidental conduct. Because the CGL policy provides coverage for accidental conduct only, the underlying complaint did not allege any basis for recovery that was covered by the policy. Industrial, therefore, had no duty to defend Hawaiian Holiday.

## IV. *CONCLUSION*

Based on the foregoing, we hold that Industrial, pursuant to the terms of the CGL policy entered into with Hawaiian Holiday, did not have a duty to defend Hawaiian Holiday against claims for breach of contract, fraud, racketeering, and misappropriation of assets. The Dallas complaint did not allege claims sounding in negligence and therefore did not trigger Industrial's duty to defend.

Accordingly, we reverse the circuit court's order granting summary judgment in favor of Hawaiian Holiday and remand with instructions that judgment be entered in favor of Industrial.