The **BURLINGTON INSURANCE COMPANY, Plaintiff–counter–defendant–Appellee,**

v.

**STEVE'S AG SERVICES, LTD., a Hawaii corporation; Steve Baczkiewicz, Defendants–counter–claimants–Appellants.**

No. 06–15329.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2007.

Filed Dec. 10, 2007.

Morison–Knox Holden Melendez & Prough, LLP, Stephen B. MacDonald, Esq., Walnut Creek, CA, Ralph J. O'Neill, MacDonald Rudy Byrns O'Neill & Yamauchi, Honolulu, HI, for Plaintiff–counter-defendant–Appellee.

Peter I. Bersin, Esq., The Law Office of Peter I. Bersin, Beverly Hills, CA, Ronald Gene Self, Esq., Pahala, HI, for Defendants–counter–claimants–Appellants.

Before: O'SCANNLAIN, TASHIMA, and M. SMITH, Circuit Judges.

* This disposition is not appropriate for publication and is not precedent except as provided

## MEMORANDUM *

Plaintiff–Appellee Burlington Insurance Company ("Burlington") filed for declaratory judgment after denying two claims for defense and indemnity submitted by its insured, Defendant–Appellant Steve's AG Services, Ltd. ("AG Services"), a tree logging business owned by Defendant–Appellant Steve Baczkiewicz ("Steve"). AG Services's first claim for a defense and indemnity related to an administrative proceeding in which the State of Hawaii Department of Land and Natural Resources alleged that AG Services illegally logged trees on state land ("the DLNR action"). The second claim related to a lawsuit in which the Damon Estate sought indemnification from AG Services and Steve for payments it made to the DLNR as a result of AG Services's logging on the Estate's property without proper permits ("Damon Estate lawsuit"). The district court granted Burlington's motion for partial summary judgment and denied the Defendants' cross-motions for partial summary judgment. We affirm.

Because the parties are familiar with the facts, we do not separately recount them here. We review a district court's grant of summary judgment de novo. *Thorman v. Am. Seafoods Co.,* 421 F.3d 1090, 1094 (9th Cir.2005) (citations omitted). We have jurisdiction under 28 U.S.C. § 1291.

■ Under Hawaii law, the duty to defend is broad and arises "whenever the pleadings raise a potential for indemnification liability of the insurer to the insured." *Burlington Ins. Co. v. Oceanic Design & Constr. Inc.,* 383 F.3d 940, 944 (9th Cir. 2004) (citing *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.,* 76 Hawai'i 166, 872 P.2d 230, 233 (1994)). The comprehensive general liability poli-

by 9th Cir. R. 36–3.

cies ("CGL policies") between AG Services and Burlington specify, in relevant part, that Burlington has "no duty to defend the insured against any 'suit' seeking damages for ... 'property damage' to which this insurance does not apply." Assuming without deciding that the DLNR action otherwise falls within the coverage of the CGL policies, we conclude that the CGL policies expressly exclude coverage for the damages that AG Services has identified as "property damage." As a result, Burlington did not have a duty to defend AG Services in the DLNR action because there was no potential for indemnification liability.

AG Services was not entitled to a defense because the DLNR sought "restoration costs" to restore the subject land. The CGL policies expressly exclude coverage for " '[p]roperty damage' to ... that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations...."[1] Thus, there is no possibility that Burlington would have to indemnify AG Services for the cost of restoring the land on which AG Services conducted its logging operations.

■ AG Services also was not entitled to a defense because the DLNR sought the "value of the timber taken." The CGL policies exclude " '[p]roperty damage' to ... [t]hat particular part of *any property* that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."[2] (Emphasis added). DLNR's claim for the value of the timber taken constitutes an effort to restore or replace the timber AG Services allegedly

cut from state-owned land, and the crux of the DLNR action is that AG Services's cutting of this timber was incorrect performance of its work.

Moreover, we do not conclude that there is a material issue of fact as to whether Burlington believed that the damages sought in the DLNR action were potentially covered by the CGL policies. While status reports that Burlington's insurance adjuster prepared may have recommended that Burlington defend AG Services, Burlington's eventual denial of AG Services's claim indicates that it determined that there was no such potential. Further, the legal issues this case presents are not so novel or widely disputed that they warrant the provision of a defense based on uncertainty regarding the possibility of coverage. *See Sentinel Ins. Co. v. First Ins. Co.*, 76 Hawai'i 277, 875 P.2d 894, 907 (1994).

■ We also conclude that there was no possibility that Burlington would have to indemnify AG Services or Steve in the Damon Estate lawsuit and, therefore, Burlington had no duty to defend AG Services and Steve in that lawsuit. The CGL policies are explicit that they apply only to "property damage" caused by an "occurrence." The CGL policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under Hawaii law, claims for breach of contract are not covered under insurance policies requiring such an "occurrence" because a breach of contract claim precludes accidental conduct. *See Oceanic Design & Constr., Inc.*, 383 F.3d at 946 (citing *Hawaiian Holiday Macadamia Nut Co.*, 872 P.2d at 233–34). The

---

1. The CGL policies define "property damage" as "[p]hysical injury to tangible property, including all resulting use of that property."

2. As defined in the CGL policies, the term "your work" means "work or operations performed by you or on your behalf [and] [m]aterials, parts or equipment furnished in connection with such work or operations."

allegations in the Damon Estate's complaint support that, like the Estate's claim for breach of contract, the claims of negligence, wrongful misconduct, and equitable indemnity also amount to breach of contract claims.

Damon Estate's negligence claim does not state a basis for any independent duty that AG Services had to the Damon Estate outside of the duties created by their contract. Thus, to the extent the Estate alleges breach of a duty, it is simply claiming breach of a contractual duty. Likewise, the wrongful misconduct claim is nothing more that a contract claim in disguise. This claim is based on AG Services's failure to obtain the necessary permits from the State before logging, a requirement that is provided for in the parties' contract. Finally, the claim for equitable indemnity sounds in contract as it is best understood as a request that the state court imply a right to indemnity from the parties' contractual relationship.

For the reasons explained above, the judgment of the district court is **AFFIRMED**.