LAW LIBRARY

NO.   29116

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ISLAND INSURANCE COMPANY, LTD., a Hawai'i
corporation, Plaintiff-Appellee,
v.
WALTER Y. ARAKAKI, Defendant-Appellant

K. HAMAKADO
CLERK, APPELLATE COURTS
STATE OF HAWAI'I

2010 JUN 16 AM 8:19

FILED

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0780)

MEMORANDUM OPINION
(By:  Nakamura, C.J., Foley and Leonard, JJ.)

Defendant-Appellant Walter Y. Arakaki (Arakaki) appeals from the Final Judgment filed on March 24, 2008 in the Circuit Court of the First Circuit[1] (circuit court).  The circuit court entered judgment in favor of Plaintiff-Appellee Island Insurance Company, Ltd. (Island) and against Arakaki.

On appeal, Arakaki contends the circuit court erred in granting Island's December 11, 2007 Motion for Summary Judgment (SJ Motion).  Arakaki raises four points of error regarding the circuit court's grant of summary judgment:

1.    The circuit court erroneously ruled that the allegations in the Complaint filed in Swift v. Arakaki, Civil No. 05-1-1516, (Swift's Complaint) were not directed against Arakaki in his official capacity within the meaning of Arakaki's Commercial General Liability (CGL) Policy with Island (the Policy).

2.    The allegations in Swift's Complaint did not denote an "occurrence" within the meaning of the Policy.

---

[1]  The Honorable Victoria S. Marks presided.

3. The allegations in Swift's Complaint did not denote "bodily injury" or "property damage" within the meaning of the Policy.

4. The circuit court erroneously relied on Swift's unverified and inadmissible Complaint as evidence negating Island's duty of coverage (indemnity).

## I. BACKGROUND

On August 23, 2005, Stephen H. Swift filed Swift's Complaint in circuit court against Arakaki and SSWYA. SSWYA was a general partnership formed by Arakaki and Swift for the purpose of acquiring various assets of the Oahu Sugar Company, Ltd. Swift's Complaint stated that a dispute had arisen over the purchase of the assets, leading to litigation that resulted in a settlement in favor of SSWYA from third parties. Swift's Complaint alleged that Arakaki and SSWYA transferred SSWYA property and assets (presumably including proceeds of the settlement) for Arakaki's individual benefit. Swift's Complaint further alleged that Arakaki's attorney denied Swift access to the partnership books.

Shortly after the filing of Swift's Complaint, Arakaki tendered defense of the lawsuit to Island. Arakaki maintained CGL insurance with Island for his contracting company: Walter Y. Arakaki, General Contractor, Inc. On May 1, 2007, Island filed a Complaint for Declaratory Judgment (Island's Complaint), seeking a determination that "Island has no duty under [the Policy] to defend or indemnify [Arakaki] for claims asserted against him in [Swift's Complaint] (the 'Underlying Lawsuit")." Island thereafter filed its SJ Motion on the duty of defense and coverage. Island attached a copy of Swift's Complaint and a declaration by Island's attorney that Swift's Complaint was "a true and accurate copy of the complaint in the [U]nderlying [L]awsuit." Arakaki opposed the motion.

2

The first circuit court granted Island's SJ Motion and filed the Final Judgment on March 24, 2008. Arakaki timely appealed.

## II. STANDARDS OF REVIEW

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaiì [sic] Community Federal Credit Union v. Keka*, 94 Hawai‘i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
>
> *Id.* (citations and internal quotation marks omitted).
>
> *Coon v. City and County of Honolulu*, 98 Hawai‘i 233, 244-45, 47 P.3d 348, 359-60 (2002) (second alteration in original).

*Kau v. City and County of Honolulu*, 104 Hawai‘i 468, 473-74, 92 P.3d 477, 482-83 (2004).

. . . .

> . . . In the insurance context, with specific regard to the insurer's duties to defend and indemnify under the policy, [the Hawai‘i Supreme Court] has distilled the summary judgment standard still further:
>
> > It is well settled that the duty to provide coverage [*i.e.*, the duty to indemnify,] and the duty to defend on the part of an insurer are separate and distinct. Moreover, the parties' respective burdens of proof with respect to the duties to indemnify and to defend are also distinct.
> >
> > With respect to [an insurer's] prayer for a declaration that it has no duty to *defend* . . . pursuant to the polic[y, its] already heavy burden of proof as a movant for summary judgment [i]s significantly augmented. The obligation to defend is

3

broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage. In other words, the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Accordingly, in connection with the issue of its duty to defend, [the insurer bears] the burden of proving that there [i]s no genuine issue of material fact with respect to whether a *possibility* exist[s] that [the insured] would incur liability for a claim covered by the polic[y]. In other words, [the insurer is] required to prove that it would be *impossible* for the [claimant] to prevail against [the insured] in the underlying lawsuit[] on a claim covered by the policies. Conversely, [the insured's] burden with respect to its motion for summary judgment [i]s comparatively light, because it ha[s] merely to prove that a *possibility* of coverage exist[s].

With respect to [an insurer's] prayer for a declaration that it ha[s] no duty to *indemnify* [the insured] pursuant to the polic[y, it is] *not* required to disprove any *possibility* that its insured might be liable for a claim asserted in the underlying lawsuits. Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, [the insurer is] required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance polic[y] and the consequent entitlement to the entry of judgment as a matter of law.

*Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 412-13, 992 P.2d 93, 107-08 (2000) (internal citations, quotation signals, and footnote omitted; some brackets and ellipses deleted and some brackets and ellipses added; emphases in original).

TRI-S Corp. v. Western World Ins. Co., 110 Hawai'i 473, 487-88, 135 P.3d 82, 96-97 (2006).

### III. DISCUSSION

#### A.

Arakaki contends that Island did not meet the high burden of proof to warrant summary judgment on the duty of defense. Under the burden of proof standard for the moving party as set forth in Tri-S Corp., Island would have to demonstrate

4

that it is impossible for Island to incur liability under the Policy for claims that Arakaki tendered for defense. Arakaki, by contrast, has to merely show that the Policy could possibly cover the tendered claim.

Given this standard, we look to Arakaki's Policy with Island to determine the Policy's coverage. The Policy provided CGL coverage with liability limits of $1 million per occurrence and $2 million in the aggregate. The Policy was in effect from July 1, 2004 to July 1, 2005. The first section of the Policy provided coverage for "bodily injury" and/or "property damage," which resulted from an "occurrence" taking place in the "coverage territory" and during the policy period. The second section of the Policy provided coverage for "personal and advertising injury," triggered by a business offense committed in the "coverage territory" during the policy period. The Policy further defined these terms:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> . . . .
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> > a. False arrest, detention or imprisonment;
> >
> > b. Malicious prosecution;
> >
> > c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> >
> > d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> e. Oral or written publication of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement;" or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."
>
> . . . .

17. "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Swift's Complaint alleged the following facts:

5. On or about March 24, 1995, Plaintiff [Stephen H. Swift] and Defendant Arakaki formed the general partnership, SSWYA.

6. Plaintiff and Defendant Arakaki entered into a certain Asset Purchase and Sale Agreement, dated March 24, 1995, and amended on April 3, 1995, with Oahu Sugar Company, Limited, for the purchase of equipment, tools, machinery, trade fixtures, parts, and other personal property ("Purchase").

7. SSWYA was formed to buy, sell, own, rent, lease and otherwise deal with said Purchase.

8. A dispute arose concerning the Purchase, resulting in litigation, from which, SSWYA received a settlement from third parties.

9. Upon information and belief, Defendants transferred SSWYA property, proceeds, benefits, and/or assets, for Defendant Arakaki's individual benefit, and Plaintiff is entitled to said proceeds, benefits, and/or assets as a general partner.

10. On January 3, 2005, Plaintiff, as a general partner of SSWYA, made a demand for access to SSWYA's books and records to Eric. S. Yamagata, counsel for Defendants.

11. On January 5, 2005, Defendant Arakaki through Mr. Yamagata refused to provide access to information concerning SSWYA to Plaintiff.

Swift's Complaint alleged six causes of action against Arakaki:

(1)   refusal to permit Swift's inspection of partnership books and records, in violation of HRS § 425-122 (2004 Repl.);

(2)   breach of the fiduciary duty of loyalty to Swift, in violation of HRS § 425-123 (2004 Repl.);

(3)   breach of the fiduciary duty of care, in violation of HRS § 425-123;

(4)   breach of the partnership contract;

(5)   wrongful transfer of partnership assets, in violation of HRS § 425-120 (2004 Repl.); and

(6)   punitive damages for Arakaki's wilful misconduct.

## B.

Arakaki argues that Swift's Complaint alleged facts involving Arakaki in his official capacity as an "executive officer"[2] and director of Arakaki, Inc.  Swift's Complaint, however, does not name Arakaki in his official capacity. Arakaki's Policy applies only to Arakaki in his official capacity as an "executive officer" and director of Arakaki, Inc.:

SECTION II--WHO IS AN INSURED

1.     If you are designated in the Declarations as:
.  .  .  .

d.     An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors.

In Arakaki's opposition memorandum to the SJ Motion, Arakaki appended the Declaration of Rodney Uchida (Uchida), one of his attorneys.  Uchida explained that Arakaki's conduct as

---

[2]   The Policy defines "executive officer" as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document."

7

alleged in the Swift Complaint implicated Arakaki in his official capacity as Arakaki, Inc.'s "executive officer" and director. In particular, Uchida noted that the SSWAY property Swift claimed was improperly transferred by Arakaki was transferred to Arakaki, Inc. This evidence raises a material issue of fact as to whether the conduct alleged in Swift's Complaint implicates Arakaki in his official capacity under the Policy.

### C.

Island argues that Swift's Complaint alleged no occurrence because the misappropriation of partnership assets (the crux of Swift's Complaint) was intentional or willful conduct by Arakaki. Island explains that Hawai'i courts determine if a claim arises from an accident (and thus an occurrence) within the coverage of a liability insurance policy by viewing the facts underlying the claim objectively from the perspective of the insured. Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Hawai'i 166, 170, 872 P.2d 230, 234 (1994). Thus, "if the insured did something or failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not within the coverage of the policy." Id. (brackets and ellipses omitted) (quoting AIG Hawaii Ins. Co. v. Caraang, 74 Haw. 620, 635-36, 851 P.2d 321, 329 (1993)).

Arakaki argues that Island's own proof raises a material issue regarding whether Swift's claims against Arakaki arose from an accident. Arakaki indicates that Swift's Complaint alleged a breach of the duty of care and grossly negligent or reckless conduct and according to Tri-S Corp., such allegations give rise to an occurrence. Arakaki's breach of the duty of loyalty and care to Swift sounds in negligence.

> [I]n this jurisdiction, we have never restricted claims sounding in negligence to unintentional or "careless" conduct. . . . [A] cause of action sounding in negligence

8

will lie if the defendant breaches a duty owed to the plaintiff, thereby legally causing the plaintiff injury. So long as "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other," *Tabieros v. Clark Equipment Company*, 85 Hawai'i 336, 353, 944 P.2d 1279, 1296 (1997) (citations and internal quotation signals omitted), *i.e.*, so long as the defendant owes the plaintiff a duty, the thoughts passing through the defendant's mind as he or she breaches that duty are immaterial.

<u>Dairy Rd. Partners v. Island Ins. Co.</u>, 92 Hawai'i 398, 419-20, 992 P.2d 93, 114-15 (2000). Because Arakaki's conduct was alleged to be negligent, it gives rise to an occurrence or accident within the meaning of Arakaki's Policy. <u>Cf.</u> <u>Hawaiian Holiday</u>, 76 Hawai'i at 171, 872 P.2d at 235 (concluding that killing of seedlings did not sound in negligence and therefore was not accidental and could not give rise to an occurrence within CGL insurance policy). We conclude that Swift's Complaint raised a material issue of fact regarding an occurrence under Arakaki's Policy.

**D.**

There is a material issue of fact as to whether Island had to defend based on the Policy's definition of property damage. Under the policy, property damage specifically includes the "loss of use" of tangible property, and the underlying complaint alleged, inter alia, that Arakaki converted property, proceeds, benefits, and/or assets for Arakaki's individual benefit.

**E.**

Island argues that even if Swift's Complaint alleged an occurrence of bodily injury or property damage, the policy exclusion for intended or expected bodily injury or property damage bars the claim. The relevant policy exclusion provides:

2.    **Exclusions**

This insurance does not apply to:

9

a.      Expected Or Intended Injury

"Bodily injury" or "property damage" expected or
intended from the standpoint of the insured.

Island argues that Arakaki intended to misappropriate partnership assets and to the extent that this misconduct raises an occurrence of bodily injury or property damage, it is barred by the policy exclusion.  Swift's Complaint states that "Defendants had a fiduciary duty of care to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of the law."  The complaint further states that "Defendants' conduct breached their duty of care to [Swift] by engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."  Swift's Complaint is not limited to solely alleging intentional misconduct.  Hawaiʻi courts construe the exclusions in policies narrowly.  See Tri-S Corp., 110 Hawaiʻi at 494 n.8, 135 P.3d at 103 n.8 (quoting Coy v. Nat'l Ins. Ass'n, 713 N.E.2d 355, 360 (Ind. Ct. App. 1999)) ("Our court has also concluded that negligent and reckless conduct 'is not enough to meet the "practically certain" standard required for an insurance policy to exclude expected injuries.'")  Given Arakaki's light burden (to merely show that the policy could possibly cover the tendered claim) under Tri-S Corp., we conclude that Arakaki has met that burden here in regards to the policy exclusions.

We conclude that the circuit court erred in granting summary judgment on the duty of defense in Island's favor.  As noted, under Tri-S Corp., Island (the moving party) has to demonstrate that it would be impossible for it to incur liability under the Policy for claims Arakaki tendered for defense.  We conclude that Island has not met this heavy burden.  We accordingly vacate the circuit court's grant of summary judgment on the duty of defense.

**F.**

We also vacate the circuit court's grant of summary judgment on the duty to indemnify. The only evidence submitted by Island in support of its SJ Motion was an unverified copy of Swift's Complaint, Arakaki Inc.'s CGL insurance policy, and a State of Hawai'i Department of Commerce and Consumer Affairs website printout regarding Arakaki, Inc. Based on our review of the existing record and our foregoing analysis, we conclude that Island failed to meet its burden of showing the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law on the issue of its duty to indemnify.

## IV. CONCLUSION

The Final Judgment filed on March 24, 2008 in the Circuit Court of the First Circuit is vacated, and this case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, June 16, 2010.

On the briefs:

Melvin Y. Agena
(Law Offices of Melvin Y. Agena)
Brian K. Yomono
for Defendant-Appellant.

Richard B. Miller
Patricia Kehau Wall
David R. Harada-Stone
(Tom Petrus & Miller, LLLC)
for Plaintiff-Appellee.

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

Associate Judge

11