# FIRST INSURANCE COMPANY OF HAWAII, INC., Plaintiff-Appellee, *v.* STATE OF HAWAII, by its Attorney General WAYNE MINAMI, Defendant-Appellant

## NO. 8510

CIVIL NO. 6303

JUNE 7, 1983

LUM, C.J., NAKAMURA, PADGETT AND HAYASHI, JJ.,
AND CIRCUIT JUDGE MOON ASSIGNED
BY REASON OF VACANCY

OPINION OF THE COURT BY HAYASHI, J.

The issue presented on appeal is whether the lower court properly granted summary judgment in favor of First Insurance Company of Hawaii, Ltd. (First Insurance) in this

declaratory judgment action wherein First Insurance is seeking reimbursement from the State, an additional insured under a general comprehensive liability policy issued by the former, for monies expended in defending and paying a judgment entered against the State in a previous lawsuit, *Furukado v. M. Sonomura Contracting Co.,* (3rd Cir. Civ. No. 4756). The lower court concluded that the policy did not obligate First Insurance to defend the State for the State's own negligence or to respond to damages which resulted therefrom. We hold that the lower court erred as to First Insurance's duty to defend, therefore we reverse in part and affirm in part.

The policy in question is a comprehensive liability insurance policy which M. Sonomura Contracting Co. (Sonomura) was required to obtain pursuant to a contract with the State to build a public highway on the Island of Hawaii. Endorsement No. 8 of the policy added the State as an additional insured.

Sonomura constructed two new lanes to State-owned Kanoelehua Avenue which transversed county-owned Kawailani Street. On the morning of the day after the two new lanes were opened to traffic, a two-car accident occurred at the intersection of Kanoelehua Avenue and Kawailani Street resulting in the death of Noriyoshi Murata, the driver of one of the cars, and injuries to Robert and May Kamelamela, the driver and passenger of the other car. Consequently, the heirs of Murata filed suit against Sonomura, the State, and the County of Hawaii. The Kamelamelas filed suit as intervenors and third party plaintiffs against the estate of Noriyoshi Murata, Sonomura, the State, and the County, seeking damages for personal injuries.

The State duly notified and tendered the defense of the lawsuit to First Insurance, who acknowledged coverage for the State as an insured to the extent any judgment was rendered against it because of Sonomura's negligence although it disavowed any duty to defend the State for the State's own negligence or to provide coverage for any liability which resulted therefrom. Nevertheless, First Insurance agreed to and did defend the State under a reservation of rights agreement. In accordance with said agreement, and upon specific request of the State, the law firm of Davis, Playdon & Gerson was retained by First Insurance to defend the State. Carlsmith,

Carlsmith, Wichman and Case defended Sonomura.

Prior to the *Furukado* trial, the parties[1] stipulated a judgment for the Kamelamelas wherein it was agreed the Kamelamelas suffered damages of $250,000 to be paid in accordance with the parties' respective negligence as determined at trial. The verdict in *Furukado* absolved Sonomura and the County and found Murata and the State respectively 85% and 15% negligent. Consequently, First Insurance paid the Kamelamelas $37,500 — 15% of $250,000 — on behalf of the State pursuant to the stipulation for judgment regarding claims of the Kamelamelas. First Insurance also incurred costs of $51,246.15 in defending the State in *Furukado*. Thereafter, First Insurance instituted this declaratory judgment action against the State to secure reimbursement for the costs it incurred. The lower court granted summary judgment in favor of First Insurance and the State brought this appeal.

We begin our discussion of the case with the oft-stated rule that "summary judgment will be sustained only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Lagua v. State,* 65 Haw. 211, 215-16, 649 P.2d 1135, 1138 (1982); *Fochtman v. Honolulu Police & Fire Departments,* 65 Haw. 180, 182-83, 649 P.2d 1114, 1116 (1982); *Technicolor v. Traeger,* 57 Haw. 113, 118-19, 551 P.2d 163, 168 (1976).

Having examined the record, we find there are no genuine issues as to any material fact; nevertheless, we believe that although First Insurance was entitled to judgment in its favor on the issue of its duty to indemnify the State, it was not entitled to judgment in its favor on the issue of its duty to defend the State in *Furukado.*

Initially, we note that the obligation of an insurer to defend its insured is separate and distinct from an insurer's obligation to pay a judgment entered against its insured. *First Insurance v. Continental Casualty Co.,* 466 F.2d 807, 811 (9th Cir. 1972);

---

[1] The parties to the stipulation for judgment regarding the claims of Robert & May Kamelamela were the Kamelamelas, Sonomura, the State, the County of Hawaii, and Kinue Furukado as the administratrix of the estate of Noriyoshi Murata.

*Donnelly v. Transportation Insurance Co.,* 589 F.2d 761, 765 (4th Cir. 1978). The duty to defend relates to coverage, which is "a matter of contract interpretation as it relates to a set of facts," and not liability, which is "concerned with an analysis of the applicable law to the same set of facts." 7C J. Appleman, Insurance Law & Practice § 4682 at 23 (Berdal 1979).

## I.

In considering the scope of First Insurance's duty to defend, we are guided by several well-settled principles of law. "The nature of the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved." *Ritter v. United States Fidelity & Guaranty Co.,* 573 F.2d 539, 542 (8th Cir. 1978). That the duty to defend is broader than the duty to pay is evidenced by the language of the contract of insurance which binds the insurer to defend, "even if any of the allegations of the suit are groundless, false, or fraudulent." 7C J. Appleman, Insurance Law & Practice § 4682 at 23 (Berdal 1979); *Ritter v. United States Fidelity & Guaranty Co., supra,* 573 F.2d at 542. "An insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy." *Standard Oil Co. v. HIG,* 65 Haw. 521, 654 P.2d 1345, 1349 (1982); *First Insurance Co. v. Continental Casualty Co.,* 466 F.2d 807, 810 (9th Cir. 1972); *Gray v. Zurich Insurance Co.,* 65 Cal. 2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966).

Corollary to the above-stated rule is the proposition that where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage. *Crawford v. Ranger Insurance Co.,* 653 F.2d 1248, 1253 (9th Cir. 1981); *St. Paul Fire & Marine Insurance Co. v. Sears,* 603 F.2d 780, 786 (9th Cir. 1979); *United States Fidelity and Guaranty Co. v. Louis A. Roser Co.,* 585 F.2d 932, 936 (8th Cir. 1978); *Babcock & Wilcox Co. v. Parsons Corporation,* 430 F.2d 531, 537 (8th Cir. 1970). "The fact that the pleadings state a cause of action that is not covered by the policy does not excuse insurer if another ground for recovery is stated that is covered because

the duty to defend has broader aspects than the duty to indemnify . . . . Accordingly, the insurer is obligated to provide a defense against the allegations of covered as well as the non-covered claims." 7C J. Appleman, Insurance Law & Practice § 4684.01 at 102, 106 (Berdal 1979). *Contra Marston v. Merchant Mutual Insurance Co.,* 319 A.2d 111, 114 (Me. 1974) (insurer bound to defend with respect to those claims which if proved are within the coverage); *Waite v. Aetna Casualty & Surety Co.,* 77 Wash. 2d 850, 855, 467 P.2d 847, 852-53 (1970) (insurer only liable for cost of defending claims which were potentially within coverage of policy).

A.

First Insurance contends that any duty it may have to defend the State must initially depend on the State's construction contract with Sonomura and then on First Insurance's insurance contract with Sonomura which named the State as an additional insured.

The State-Sonomura contract required Sonomura to obtain comprehensive personal injury and property damage liability insurance and to include the State as an additional insured.[2]

---

[2] The only portion of the contract between Sonomura and the State included in the record is section 103.09 of said contract which provides in pertinent part:

*103.09 Submission of Insurance Certification.* The Contractor shall submit to the Engineer within 15 days from the date of award of the contract, 3 copies each of insurance certification stating that the Contractor has taken out:

(A) Comprehensive Personal Injury and Property Damage Liability, including Automobile Bodily Injury and Property Damage Liability insurance with the following minimum limits of liability:

Bodily Injury Liability      $250,000 each person
                                    $500,000 each occurrence.

Property Damage Liability    $100,000 each occurrence

and with the State of Hawaii named as additional insured.

(B) Workmen's Compensation.

All insurance aforementioned shall cover the insured for all work performed under the contract, all work performed incidental thereto or directly or indirectly connected therewith, including traffic detour work or other work performed outside of the work area, and all change orders.

The pertinent provision of the insurance contract reads as follows:

The company will pay on behalf of the insured all sums, which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company *shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent,* . . . . [Emphasis added.]

As an additional insured, the State was entitled to the protection afforded by the above provision. Endorsement No. 8 which added the State as an additional insured provides:

It is agreed that:

1. The "Persons Insured" provision is amended to include as an insured the person or organization named above [the State] (hereinafter called "additional insured"), but only with respect to liability arising out of (1) operations performed for the additional insured by the named insured at the location designated above or (2) acts or omissions of the additional insured in connection with his general supervision of such operations.

Thus, the insurance policy obligated First Insurance to defend the State for any liability the State incurs as a result of Sonomura's negligence or as a result of its own negligence in supervising Sonomura's work. *See* II *infra.* Endorsement 8 also contained exclusions which provided that the insurance would not apply to bodily injury or property damage occurring after the completion of all work on the project or after the portion of Sonomura's work out of which injury or damage arises was put to its intended use.[3]

---

[3] The pertinent exclusions read as follows:

3. Additional Exclusions This insurance does not apply:

    (a) to bodily injury or property damage occurring after

First Insurance contends that neither the State-Sonomura contract nor the policy issued by First Insurance provided the State with protection against the State's own acts of negligence. Moreover, First Insurance argues the additional exclusions were applicable under the facts of this case, therefore the State was not covered for its own negligence and First Insurance was under no obligation to defend it for such negligence.

The flaw in First Insurance's argument is that it attempts to define First Insurance's duty to defend on the basis of the relationship between its policy provision and the ultimate outcome in the *Furukado* case. As we stated above, an insurer's duty to defend arises whenever an action raises the potential for indemnification liability of the insurer to the insured. *Standard Oil Co., supra.* "The duty to defend is determined at the time suit is brought and not at the conclusion of litigation." 7C J. Appleman, Insurance Law & Practice § 4684 at 85 (Berdal 1979). Thus, an insurer's "ultimate non-liability should not free it from its concurrent contractual duty to defend." *First Insurance v. Continental Casualty Co.,* 466 F.2d 807, 811 (9th Cir. 1972). Consequently, the jury verdict absolving Sonomura and finding the State negligent is not determinative of the issue of First Insurance's duty to defend.

The pleadings in *Furukado* alleged, *inter alia,* that the construction and improvement of Kanoelehua Avenue "was being performed by the Defendant SONOMURA under contract to and under the supervision of the [Defendant] STATE OF HAWAII"; that the two newly constructed lanes were opened to traffic by "the Defendant SONOMURA, under the supervision of the [Defendant] STATE OF HAWAII"; and

---

(1) all work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed or

(2) that portion of the named insured's work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project;

(b) to bodily injury or property damage arising out of any act or omission of the additional insured or any of his employees, other than general supervision of work performed for the additional insured by the named insured;

that "the Defendants SONOMURA, [and the] STATE OF HAWAII . . . each one, carelessly, recklessly, and negligently failed to post any guards, barriers, lights, warning signals or warning signs to advise members of the public [that the intersection] should be approached with caution and special attention to the changed condition."

Thus, the *Furukado* lawsuit raised the possibility that the State could be held liable for its own negligence, for negligence in connection with its general supervision of Sonomura's operations, or for Sonomura's negligence. Potential liability within the parameters of the policy was acknowledged by First Insurance in its response of August 15, 1977, to the tender of the defense of the *Furukado* case by the State: "It is our position that the State is an insured to the extent that any judgment is rendered against it on account of Sonomura's negligence." Thus, although First Insurance disclaimed coverage for liability caused by the State's own negligence, it agreed to afford the State a defense under a reservation of rights agreement "since [First Insurance did] not know at [the] time against whom liability [would] be found." First Insurance, in its answering brief, also acknowledged a limited duty to defend the State; "[a]s a named additional insured, the State is covered for any sums it is required to pay as a result of the negligence of Sonomura and is entitled to be defended against claims made against the State on account of the negligence or claimed negligence of Sonomura, and not of the State's own negligence." (First Insurance's answering brief at 10).

Moreover, the "allegations of the complaint [did not] cast the pleading solely and entirely within [the] policy exclusion," *Kincaid v. Simmons,* 66 A.D.2d 428, ___, 414 N.Y.S.2d 407, 410 (App. Div. 1979), thus, First Insurance was not relieved of its duty to defend the State.

Although the *Furukado* action raised claims against the State which arguably fell outside the coverage provided by the policy, i.e., the State's negligence unrelated to supervision, it also raised covered claims which First Insurance acknowledged, thus, First Insurance had a duty to defend the State for the entire lawsuit.

## B.

Having determined that First Insurance had a duty to defend the State, we are confronted with First Insurance's assertion that it discharged its duty by accepting the State's tender of defense under a reservation of rights agreement and by retaining counsel to defend Sonomura.

"A reservation of rights agreement is a notice by the insurer to the insured that the insurer will defend the insured but that the insurer is not waiving any defenses ... it may have under the policy." *Crawford v. Ranger Insurance Co.,* 653 F.2d 1248, 1252 (9th Cir. 1981). *See* 7C J. Appleman, Insurance Law & Practice § 4694 (Berdal 1979). Thus, affording an insured a defense under a reservation of rights agreement merely retains any defenses the insurer has under its policy; it does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense.

Additionally, First Insurance did not discharge its duty to defend the State by providing Sonomura with counsel to defend against Sonomura's alleged negligence. Recovery in the *Furukado* case was premised on finding one or more of the defendants negligent. It was impossible to determine the basis on which plaintiff would recover, if at all, until the end of the trial. Although it was in the common interest of the State and Sonomura to prevent plaintiffs from securing any recovery, a potential conflict between the interests of the State and Sonomura is apparent.

> A conflict of interest may arise when the insurer covers different parties who are codefendants in a suit which triggers the insurer's duty to defend. Where the interests of such codefendants do not coincide, the insurer is required to provide separate counsel by selecting independent outside counsel for each insured.

14 Couch on Insurance sec. 51:79 at 569 (Rhodes 1982); *see Bituminous Insurance Co. v. Pennsylvania Manufacturers' Association Insurance Co.,* 427 F. Supp. 539, 555 (E.D. Pa. 1976) (Where conflict existed between interests of contractor and subcontractor, both of whom insurer had a duty to defend, insurer was required to provide separate counsel.). *Cf. Howard*

*v. Russell Stover Candies, Inc.,* 649 F.2d 620, 625 (8th Cir. 1981) (Insurer must either provide independent counsel to represent insured or pay costs incurred by insured in hiring counsel of its choice where there exists a conflict between insurer's and insured's interests); *United States Fidelity & Guaranty Co. v. Louis A. Roser, Inc.,* 585 F.2d 932, 937-39 (8th Cir. 1978) (Where conflict existed, insurer must bear expense of defense provided by counsel hired by insured.).

Thus, First Insurance had to provide separate counsel for the State; its appointment of counsel for Sonomura did not act to discharge First Insurance's obligation to defend the State. We reverse the lower court as to its ruling in favor of First Insurance on the issue of First Insurance's duty to defend and enter judgment in favor of the State. *See Flint v. MacKenzie,* 53 Haw. 672, 501 P.2d 357 (1972) (Supreme court empowered to order lower court to enter summary judgment in favor of non-moving party where no genuine issue as to any material fact existed and non-moving party was entitled to summary judgment as a matter of law even though said party failed to file a cross motion for summary judgment in the lower court.).

## II.

We now approach the question of whether First Insurance's policy obligates First Insurance to indemnify the State.[4] We are reminded by First Insurance that "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." 6B J. Appleman, Insurance Law & Practice § 4255 at 40 (Buckley 1979); *Fresno Economy Import v. United States Fidelity,* 76 Cal. App. 3d 272, 280, 142 Cal. Rpt. 681, 686 (1978). Insurance policies are subject to the general rules of

---

[4] First Insurance argued that it has no duty to indemnify the State because the policy did not provide coverage and because such coverage would be in contravention of HRS § 431-453. In light of our resolution of the coverage issue, we need not comment on the possible applicability of HRS § 431-453.

contract construction, *Industrial Indemnity Co. v. Aetna Casualty & Surety Co.,* 465 F.2d 934 (9th Cir. 1972); the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended, *Id.* at 936, and "[t]he court must . . . respect the plain terms of the policy and not create ambiguity where none exists." *Crawford v. Ranger Insurance,* 653 F.2d 1248, 1250 (9th Cir. 1981).

As stated above, the policy provision which extends coverage to the State as an additional insured provides coverage "but only with respect to liability arising out of (1) operations performed for the additional insured by the named insured at the location designated above or (2) acts or omission of the additional insured in connection with his general supervision of such operations."

The State contends provision (1) provides coverage to the State with respect to any liability "arising out of" Sonomura's operations irrespective of whether Sonomura was neligent, citing *Retherford v. Kama,* 52 Haw. 91, 470 P.2d 517 (1970) for the proposition that the phrase "arising out of" should not be read as necessitating a causal relationship between the State's liability and fault on the part of Sonomura. The fallacy in this argument is that it overlooks exclusion 3(b) of the policy which explicitly provides that "[t]his insurance does not apply: . . . (b) to bodily injury or property damage arising out of any act or omission of the additional insured or any of his employees, other than general supervision of work performed for the additional insured by the named insured." The exclusion limits coverage to liability incurred by the State which results from Sonomura's negligence or from an act or omission of the State in its general supervision of the work performed by Sonomura. Since the *Furukado* jury found Sonomura not negligent, provision (1) does not afford the State coverage.

Nevertheless, the State argues that coverage under provision (2) may be available in the instant case, contending the jury verdict did not conclusively determine that the State's negligence was not the result of the State's failure to adequately supervise Sonomura's operations. We disagree. The *Furukado* action was premised on the alleged failure of the State, the County, and/or Sonomura to adequately advise the public

that the intersection should be approached with caution due to the changed condition. When the jury verdict absolved Sonomura and the County of any negligence on their part it effectively determined that the State was negligent in failing to adequately warn the public. Such negligence does not hinge on a failure to supervise Sonomura. Thus, the policy does not provide coverage to the State for the State's negligence and the lower court properly granted summary judgment in favor of First Insurance on its duty to indemnify the State.

Affirmed in part and reversed in part.

*Laurence K. Lau,* Deputy Attorney General, (*Hyun S. Kim,* Law School Intern, with him on the opening brief) for appellant.

*Raymond K. Hasegawa* and *Tom C. Leuteneker* (*Carlsmith, Carlsmith, Wichman and Case,* of counsel), for appellees.