272 P.3d 1215

Charles Mitchell HART and Lisa Marie
Hart, Petitioners/Plaintiffs–
Appellants,

v.

TICOR TITLE INSURANCE COMPANY,
Respondent/Defendant–Appellee.

No. SCWC–29467.

Supreme Court of Hawai'i.

March 27, 2012.

Philip J. Leas, Calvert G. Chipchase, and Christopher T. Goodin (of Cades Schutte LLP) for petitioners/plaintiffs-appellants.

Wayne P. Nasser, Francis P. Hogan, and Connie C. Chow (of Ashford & Wriston) for respondent/defendant-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and MCKENNA, JJ.

Opinion of the Court by DUFFY, J.

Petitioners/Plaintiffs–Appellants Charles Mitchell Hart and Lisa Marie Hart ("the Harts") filed a timely application for a writ of certiorari ("Application"), urging this court to review the Intermediate Court of Appeals' ("ICA") July 21, 2011 summary disposition order and September 21, 2011 judgment on appeal, which affirmed the judgment of the district court of the first circuit ("district court") entered on December 4, 2008 ("judgment")[1] in favor of Respondent/Defendant–Appellee TICOR Title Insurance Company ("TICOR") on the Harts' claim for breach of contract. The district court's judgment also specified that the Harts' motion for partial summary judgment filed on October 21, 2008 was denied, and awarded TICOR attorneys' fees of $5,000.00 and costs of $281.49.

We accepted the Harts' Application, which presents the following questions:

A. Whether the ICA gravely erred in concluding that TICOR had no duty to defend the Harts against the State's claim to any interest in the Harts' property that may have escheated to the State where the ICA determined there was no duty to defend only by relying on procedural defects in the

State's claim and the State's subsequent abandonment of the claim.

B. Whether the ICA gravely erred in upholding the award of attorneys' fees and costs to TICOR.

Based on the analysis below, we vacate the ICA's judgment and reverse the judgment of the district court in favor of TICOR. We also vacate the district court's award of attorneys' fees and costs to TICOR. We remand the case to the district court with instructions (1) to enter judgment in favor of the Harts, and (2) to determine an award of attorneys' fees and costs to the Harts, with the specific instruction that the Harts' award be limited to the period of time from the Harts' tender of defense to TICOR until the escheat claim reached resolution through written court order.

## I. BACKGROUND

### A. The Harts' Title Insurance Policy

This appeal arises from TICOR's refusal to defend the Harts under their title insurance policy against an escheat[2] claim asserted by the State of Hawai'i. The Harts purchased a title insurance policy from TICOR for their property comprised of two lots in Ewa Beach ("Policy"); TICOR issued the Policy on July 13, 2005.[3] The Policy provides, in relevant part:

Subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B and the conditions and stipulations, TICOR Title Insurance Company, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

---

1. The Honorable Christopher P. McKenzie presided.

2. *Black's Law Dictionary* 623 (9th ed. 2009) defines "escheat" as:

 "(1) *Hist.* The reversion of land ownership back to the lord when the immediate tenant dies without heirs. . . . (2) Reversion of property (esp. real property) to the state upon the death of an owner who had neither a will nor any legal heirs. . . . (3) Property that has so reverted."

3. Policy No. 7407011–30366.

2. *Any defect in or lien or encumbrance on the title;*

3. Unmarketability of the title;

4. Lack of a right of access to and from the land.

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.*

(Emphasis added). Additionally, the Policy includes the following "Conditions and Stipulations," in relevant part:

4. Defense and Prosecution of Actions: Duty of Insured Claimant to Cooperate

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations [entitled "Options to Pay or Otherwise Settle Claims: Termination of Liability"], the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

The Policy contains the following "Exclusions from Coverage," in relevant part:

9. Claims arising out of customary and traditional rights and practices, including without limitation those exercised for subsistence, cultural, religious, access or gathering purposes, as provided for in the Hawaii Constitution or the Hawaii Revised Statutes.

10. Rights or claims of persons or entities other than the insured involving or arising out of: mineral or metallic mines; geothermal resources; water; fishing, commerce or navigation; creation or loss of the land or any portion thereof by accretion, avulsion, erosion or artificial means; persons residing on or otherwise in possession of the land or any portion thereof; trails, roadways or other rights of way, including without limitation any such rights or claims under Chapter 264, Hawaii Revised Statutes.

Additionally, Schedule B to the Policy provides, in relevant part:

All matters set forth in the paragraphs below the caption "Exclusions from Coverage" on the inside cover of this Policy and the following matters are expressly excluded from the coverage of this Policy and [TICOR] will not pay loss or damage, costs, attorney's [sic] fees or expenses which arise by reason thereof.

. . .

2. Location of the seaward boundary in accordance with the laws of the State of Hawaii and shoreline setback line in accordance with County regulation and/or ordinance and the effect, if any, upon the area of the land described herein.

B. *The Harts' Land Court Proceeding*

On August 2, 2005, the Harts filed a Land Court petition to consolidate their two lots into one parcel.[4] In response to the Harts' proceeding, the State of Hawai'i ("State") filed an answer to the Harts' petition for consolidation ("Answer") on October 24, 2005. The State's answer asserted present interests in the Harts' property, in relevant part:

THIRD DEFENSE:

. . . [the] State denies any allegations adverse to *its interest in or affecting* [the Harts' property], which are as follows:

1. The State owns the submerged land up to the upper reaches of the wash of the waves, including the erosion areas.

2. The State owns all mineral and metallic mines of every kind or description on the property, including geothermal

---

4. Land Court Case No. 05–0015, Application No. 242.

rights, and the right to remove the same.

3. The State reserves the rights of native tenants in the property.

4. The State reserves all right, title, interest[ ] or claim to waters having their source upon or flowing over or under the property.

5. The State reserves an easement for the free flowage of waters through, over, under[ ] and across the property.

6. *The State reserves any interests in the property that may have escheated to the State.*

7. The State reserves any other interests in the property that may be revealed during the course of this Petition proceeding.

(Emphasis added). The State then requested the following affirmative relief from the Land Court regarding its escheat claim:

Wherefore, [the] State prays that the Court rules that:

. . .

6. The State has reserved any interests in the property that may have escheated to the State[.]

Later, on October 30, 2006, the State again asserted these same claims in its answer to the Harts' amended petition for consolidation ("Answer to Amended Petition"). Ultimately, through its answer and answer to amended petition, the State twice asserted its present interest in the Harts' property by way of escheat and twice asked the Land Court for affirmative relief.

The Harts tendered their defense against all the State's claims to TICOR on November 7, 2005. TICOR refused the Harts' tender on January 4, 2006. TICOR's January 4, 2006 response collectively categorized the State's claims, reservations and defenses as the "State's Claims." TICOR explained that because the Harts did not specify which of the "State's Claims" they were tendering to TICOR, TICOR assumed that the tender was "for the defense of the State's water and mineral rights, native tenants' rights, erosion and shoreline setback claims." Based on the

Policy's Exclusions for Coverage and Schedule B, TICOR concluded that defense of these specific claims was excluded under the Policy.

The Harts replied on January 9, 2006, contending that TICOR "cited no policy exclusion for [the escheat] claim, and the [P]olicy insures that the State owns no interest in the insured property by way of escheat. Thus, [TICOR] is obliged to defend against that claim." TICOR disagreed. Significantly, however, in a March 9, 2006 letter to the Harts, TICOR conceded that a claim of escheat is *not* excluded from coverage, but contended that "[w]hile escheat to the state is not a matter which is excluded from coverage, it does not appear that the [S]tate is currently making any claim of escheat." Rather, the State "has merely reserved its right to make that claim at some point in the future." Accordingly, in TICOR's view, the State did not assert any "claim" that fell within the Harts' Policy coverage.

Consequently, the Harts proceeded to defend against all of the State's claims in Land Court. The Harts filed a motion for summary judgment to resolve all encumbrances on title claimed by the State ("Motion for Summary Judgment Re: Encumbrances") on June 6, 2007. On June 22, 2007, the State filed a memorandum in opposition to the Harts' motion for summary judgment re: encumbrances, stating "[t]he State is not pursuing any claim of escheat to the State." The Land Court heard the motion on July 2, 2007.[5] On December 5, 2007, the Land Court granted in part and denied in part the Harts' motion:

[the Harts'] Motion is granted as the court has determined that *there is no basis for the State's claims for* the rights of native tenants, mineral and metallic mines[ ] and *escheat,* and is denied as to the State's claims for submerged lands up to the shoreline, underground water and surface streams[ ] and an easement for the free flowage of water. However, the State is not foreclosed in the future from asserting claims for the rights of native tenants or mineral and metallic mines if they actually manifest in the future.

5. The Honorable Gary W.B. Chang presided.

(Emphasis added). On February 1, 2008, the Land Court ordered the consolidation of the Harts' lots.

On March 28, 2008, the Harts requested reimbursement from TICOR for the legal fees associated with its defense of the State's claims against their property. The Harts contended that the State asserted an escheat claim covered under the Policy, and though it was a "false claim[,] ... defense against the escheat claim was inseparably part of the defense of all claims, and [TICOR] was obligated to see the defense through to conclusion by court ruling." Accordingly, the Harts demanded reimbursement for their attorneys' fees and costs in the amount of $28,982.43 and notified TICOR that if it failed to respond by April 18, 2008, the Harts would file suit. TICOR responded with a letter affirming denial of the Harts' defense claim on May 2, 2008.

## C. *The Harts' District Court Proceeding*

The Harts filed the instant suit against TICOR in district court for breach of contract under the Policy and bad faith on May 6, 2008.[6] On June 12, 2008, the district court entered a default judgment against TICOR and awarded the Harts $21,485.59.[7] TICOR responded with a motion to set aside entry of default and default judgment on June 20,

---

6. TICOR claims that, according to the Harts' attorneys' invoices, the Harts' counsel reviewed TICOR's May 2, 2008 letter affirming the denial of the Harts' defense claim on May 7, 2008 (*i.e.,* one day after the Complaint was filed in district court).

7. The Honorable Hilary B. Gangnes presided.

8. TICOR asserted in its Motion to Set Aside Entry of Default and Default Judgment:

Despite receiving the May 2, 2008 letter, [the Harts] elected not to notify either Title Guaranty in Honolulu or [sic] TICOR's counsel in California that they had filed the Complaint. Instead, [the Harts] served the Complaint upon "The Corporation Company," TICOR's agent registered with the Division of Insurance, Department of Commerce and Consumer Affairs. The return date in this action was set for May 19, 2008, a mere 12 days after the date of service. The Corporation Company mailed the Complaint to TICOR's mainland office in California. Before TICOR could review the Complaint and have opportunity [sic] to retain Ha-

---

2008.[8] The district court granted TICOR's motion on July 9, 2008.

The Harts filed a motion for partial summary judgment on October 21, 2008. The Harts' motion asserted:

[d]espite conceding that escheat stated a covered claim, TICOR refused to defend the Harts. TICOR did not investigate the State's claim. Instead, to avoid its defense obligation, TICOR on its own simply re-characterized the State's claim from "[t]he State *reserves any interest* in the property that may *have escheated* to the State" to "[t]he State has *merely reserved its right* to make that claim *at some point in the future.*" Relying on its contrived distinction between the reservation of an interest that arose in the past and the reservation of the right to make a claim at some point in the future, TICOR denied coverage.

Ultimately, the Harts contended that the State's assertion of a claim for escheat in its answer and answer to amended petition raised the potential for coverage under the Policy. Accordingly, Hawai'i law mandates that because a mere potential for coverage existed under the Policy, "TICOR had a duty to defend the Harts until that potential was resolved."

In response, TICOR filed a memorandum in opposition to the Harts' motion for partial summary judgment on October 29, 2008.[9]

---

waii counsel, however, ... default was entered against TICOR.

This case has just begun. There are significant questions raise [sic] as to the merits of [the Harts'] case. Thus, TICOR respectfully requests this Court to allow its defenses to be heard.

9. TICOR also filed its own motion for summary judgment on November 6, 2008. TICOR submitted a proposed order to the district court to deny the Harts' motion for summary judgment via letter to the presiding judge, the Honorable Christopher P. McKenzie. TICOR's letter to Judge McKenzie stated:

... in an effort to conserve judicial resources, the parties agree that the Proposed Order shall also include language entering summary judgment against the [Harts] and in favor if TICOR on the [Harts'] claims for breach of contract, breach of implied covenant of good faith and fair dealing and bad faith.

TICOR has filed a Motion for Summary Judgment.... In the event that the Court files the Proposed Order, TICOR's Motion will be withdrawn....

TICOR argued that the State failed "to allege a present claim to an interest insured by TICOR[ ]" and, therefore, TICOR was not obligated to tender the Harts a defense. TICOR explained that the Harts voluntarily filed their lot consolidation action in Land Court and this voluntary action prompted the State's reservation.[10] "The State did not file a counterclaim against [the Harts]. The State's [a]nswer did not attack [the Harts'] title." Instead, the State's escheat reservation was but one of many "standard reservations—the same reservations that the State asserts in every Land Court case."

TICOR also asserted that the Harts' "counsel knew that the State did not claim to own a present interest by way of escheat." Nevertheless, the Harts "tendered the prosecution of their voluntary Petition to TICOR." TICOR pointed out that the Harts' counsel's invoices for attorneys' fees "do not indicate that any time was spent on the issue of escheat."

The district court heard the motions on November 3, 2008.[11] The district court agreed with TICOR and denied the Harts' summary judgment motion from the bench. On November 13, 2008, the district court entered "summary judgment against the Harts and in favor of TICOR on the Harts' claim for breach of contract for failing to defend them."[12] The district court found "that the [S]tate's escheat defense was a routine reservation of a possible defense and did not trigger coverage" and that "the language raising the escheat defense did not create a realistic or reasonable potential for coverage" under the Policy. The district

court also awarded TICOR attorneys' fees and costs in the amount of $5,281.49.

The Harts appealed. The ICA affirmed the district court's judgment, noting "[t]he State's reservation of possible rights did not amount to a claim of an escheated interest[ ]" in part because the State did not follow the statutory requirements for making an escheat claim. *Hart v. Ticor Title Ins. Co.,* No. 29467, 125 Hawai'i 247, 2011 WL 2938210, at *1 (Haw.App. July 21, 2011). Specifically, "a claim of escheat may be raised only in accordance with Hawaii Revised Statutes § 665-1 (1993)[,]"[13] which requires the State to file an action in the first circuit court setting forth the factual basis for escheat in order to assert such a claim. *Id.* According to the ICA, the State failed to assert any facts supporting a claim of escheat and made no demand for an escheated interest in its answer. *Id.* Additionally, in a footnote, the ICA explained that "[l]ater in the consolidation proceeding, the State expressly clarified that it had no escheat claim." *Id.* at *1 n. 2. As such, "the [d]istrict [c]ourt did not err in concluding that [TICOR] had no duty to defend the Harts under the subject title insurance policy." *Id.* at *1. Furthermore, "[g]iven [the ICA's] disposition of the Harts' underlying claim, there is no basis for disturbing the award [of attorneys' fees]." *Id.*

The Harts filed a timely Application on December 20, 2011. United Policyholders submitted a motion for leave to file an amicus brief in support of the Harts' Application also on December 20, 2011. On December 23, 2011, TICOR filed an opposition to United Policyholder's motion. This court granted

---

10. The Harts responded during the motion for summary judgment hearing on November 3, 2008, that while the State's escheat claim "arose in the context of the Harts' [lot consolidation] petition, ... it was nonetheless an affirmative attack on title."

11. The Honorable Christopher P. McKenzie presided.

12. Accordingly, TICOR withdrew its own motion for summary judgment.

13. HRS § 665-1 (1993) provides:
In all cases where real property escheats by law to the State, the attorney general shall file an information in the circuit court of the first

circuit, setting forth the facts upon which the claim of the State to the escheat is based. Summons shall be issued as in other actions. The attorney general shall cause the summons to be served upon any person in possession of the property, and shall also cause a copy thereof to be published once a month for three months in a newspaper of general circulation in the State. Upon the hearing of the matter, if the court finds the facts averred in the information substantiated by proof and sufficient in law, it shall make and cause to be entered a decree declaring the property an escheat to the State.

United Policyholders' motion on December 29, 2011 and United Policyholders filed its amicus brief on January 4, 2012. TICOR submitted a response to the Harts' Application on January 4, 2012. On January 9, 2012, TICOR filed a response to United Policyholders' amicus brief. We accepted the Harts' Application on January 24, 2012 and held oral argument on February 22, 2012.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

■ This court reviews a lower court's summary judgment decision de novo under the same standard employed by the lower court. *Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories[ ] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) 56(b) (2011). Furthermore, "[a] fact is material if proof of the fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Ka'u Agribusiness Co., Inc. v. Heirs or Assigns of Ahulau*, 105 Hawai'i 182, 188, 95 P.3d 613, 619 (2004) (citing *Hunt v. Chang*, 60 Haw. 608, 618–19, 594 P.2d 118, 124 (1979)).

■ "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina*, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

Stated differently, this court "must view all of the evidence and the inferences drawn therefrom in the light most favorable to the [party opposing the motion]." *Maguire*, 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

### B. Attorneys' Fees

■ This court reviews a lower court's award of attorneys' fees for abuse of discretion. *Allstate Ins. Co. v. Pruett*, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008) (citation omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Lepere v. United Pub. Workers*, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)). In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (quoting *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999)).

## III. DISCUSSION

We hold that the ICA erred in concluding that TICOR did not have a duty to defend the Harts against the State's escheat claim in the specific, unique circumstances of this case, and in affirming the district court's judgment and award of attorneys' fees and costs in favor of TICOR.[14]

### A. The ICA erred in concluding that TICOR had no duty to defend the Harts against the State's escheat claim.

Hawai'i insurance law regarding the insurer's duty to defend is well established. Un-

14. As noted earlier herein, the district court employed an unusual procedure in reaching its judgment. The Harts filed their motion for summary judgment on October 21, 2008. TICOR filed an opposition on October 29, 2008. The district court heard the motion and opposition on November 3, 2008, and ruled in favor of TICOR from the bench. TICOR filed its own motion for summary judgment on November 6, 2008. On November 10, 2008, TICOR submitted a proposed order to Judge McKenzie via letter. On November 13, 2008, the district court signed the proposed order, entering "summary judgment

against the Harts and in favor of TICOR." Also on November 13, 2008, TICOR withdrew its motion for summary judgment.

Because both parties presented summary judgment motions to the district court and because TICOR ultimately succeeded, this court will view the evidence in the light most favorable to the Harts. As explained below in Section III.A.2., TICOR bore the burden of proving that there was no genuine issue of material fact with respect to whether a *possibility* existed that the Harts would incur an encumbrance on their insured land.

der our precedent, TICOR had a duty to defend the Harts against the State's escheat claim under the Policy.

### 1. Ambiguities in the insurance contract must be resolved in favor of the insured.

■ An insurer's duty to defend stems from the policy contract and, thus, the language of the policy involved determines the scope of that duty. *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Haw., Ltd.*, 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994). When interpreting insurance contracts, this court has acknowledged that "insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." *Dairy Road*, 92 Hawai'i at 411, 992 P.2d at 106 (quoting *First Ins. Co. of Haw., Inc. v. State*, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983)) (brackets omitted). Furthermore, TICOR correctly points out that "[a] court must respect the plain terms of the policy and not create ambiguity where none exists." *Allstate*, 118 Hawai'i at 182, 186 P.3d at 617 (internal quotation marks omitted) (quoting *Smith v. New England Mut. Life Ins. Co.*, 72 Haw. 531, 537, 827 P.2d 635, 638 (1992)).

■ However, "because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Dairy Road*, 92 Hawai'i at 411–12, 992 P.2d at 106–07 (brackets and citations omitted). Courts are to construe insurance policies in "accord with the reasonable expectations of a layperson." *Id.* at 412, 992 P.2d at 107 (citations omitted). Ultimately, "[a]ll doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured[.]" *Id.* (quoting *Sentinel*, 76 Hawai'i at 287, 875 P.2d at 904).

■ In the instant case, the parties dispute whether the State's escheat reservation contained in its answer and answer to amended petition qualifies as an "escheat claim" that triggered coverage under the Harts' Policy. The Harts maintain that the State's answer "asserted interest in and claims against" the Harts' property. On the other hand, TICOR argues, and the ICA agreed, that the State was not making an escheat "claim" in its Answer, but was "merely" indicating "that it was not waiving, by its response, any claims based on escheat." *Hart*, 2011 WL 2938210, at *1. Accordingly, TICOR contends that the term "claim" is unambiguous. We agree with the Harts.

In *Allstate*, this court determined that because the term "any person" was not defined in the applicable automobile insurance policy, and given the context of the term's usage, "any person" was ambiguous and should, therefore, be construed in favor of the insured. 118 Hawai'i at 182, 186 P.3d at 617. Standing alone, an ambiguous term "should be interpreted according to its plain, ordinary, and accepted sense in common speech[.]" *Id.* (brackets and citation omitted). "However, this court need not do so if it appears from the policy that a different meaning is intended." [15] *Id.* (internal quotation marks and citation omitted). Some terms have clear meaning when standing alone, but "that meaning can become ambiguous through the manner in which those terms are used throughout the policy." [16] *Id.* at 183, 186 P.3d at 618 (internal brackets, ellipses, emphasis and citation omitted).

As persuasive authority, in *St. Paul Fire & Marine Insurance Co. v. Hawaiian Insurance & Guaranty Co.*, 2 Haw.App. 595, 637

---

15. In *Allstate*, this court considered the context of the ambiguous term's use within the insurance policy; its analysis was "not confined to either a single clause or term in isolation from the rest of the policy." *Allstate*, 118 Hawai'i at 182, 186 P.3d at 617.

16. "In this regard, when terms are used selectively throughout the policy's exclusions in such a way as to create the impression that they refer to mutually exclusive classes, an ambiguity results, which must be resolved against the insurer." *Allstate*, 118 Hawai'i at 182, 186 P.3d at 617 (internal citations, quotation marks and brackets omitted).

P.2d 1146 (1981), the ICA adhered to the commonly accepted legal meaning of the term "claim" to determine that when an insurance policy contained no definition of "claim," three separate acts of negligence [17] resulted in three "claims" for purposes of the policy's liability limitation clause. Though the ICA decided *St. Paul Fire* before this court's landmark decisions in *Sentinel* and *Dairy Road,* the ICA correctly stated therein that "[i]nsurance contracts are contracts of adhesion ... [;] they are to be liberally construed in favor of the insured and against the insurer." *Id.* at 596, 637 P.2d at 1147 (citations omitted); *see Dairy Road,* 92 Hawai'i at 411–12, 992 P.2d at 106–07 ("[I]nsurance policies are contracts of adhesion ... [;] they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.") (citations omitted, some brackets added).

 Unlike in *Allstate,* "claim" in the instant Policy is not used in different ways within the contract as to create ambiguity. Instead, as in *St. Paul Fire,* ambiguity arises here simply because "claim" is not defined in the Policy. Following the general construction rules explained in *Dairy Road* and *Allstate,* "claim" should be interpreted according to its plain, ordinary, and accepted sense in common speech consistent with the reasonable expectations of a layperson. *See Dairy Road,* 92 Hawai'i at 412, 992 P.2d at 107 (this court construes insurance policies in "accord with the reasonable expectations of a layperson"); *see also Allstate,* 118 Hawai'i at 182, 186 P.3d at 617 (this court construes policy terms "according to their plain, ordinary, and accepted sense in common speech"). Any ambiguities must be liberally construed in favor of the insured. *Dairy Road,* 92 Hawai'i at 411–412, 992 P.2d at 106–07.

A "claim" includes any "interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment or a right or thing[.]" [18] *Black's Law Dictionary* 282 (9th ed. 2009). TICOR's argument that "claim" is unambiguous and that the State did not assert a "claim" within the meaning of the policy is unpersuasive.

In this case, the State twice asserted that it had "interest in or affecting [the property], which are as follows: ... 6. The State reserves any interests in the property that may have escheated to the State." Additionally, the State twice requested affirmative relief: "Wherefore, [the] State prays that the Court rules that: ... 6. The State has reserved any interests in the property that may have escheated to the State[.]" We agree with the Harts that

> [t]hrough the reservation, the State alleged it had existing rights and interest in the [p]roperty that may "have escheated" and that those rights and interest would be noted against the Harts' Land Court-registered title.... The State's escheat reservation was an independent and affirmative claim to an interest in the Harts' [p]roperty, just like every other "reserv[ation]" made in the State's pleadings. For example, the State reserved "the rights of native tenants in the property," and "an easement for the free flowage of waters through, over, under, and across the property." The State prevailed on some of those claimed interests and lost on others. Those reservations plainly sought to assert "claims."

A layperson would have construed the State's escheat language as the State asserting a claim against the Harts' title. Moreover, interpretation of the State's escheat claim in accord with the ordinary, plain and common definition of "claim" indicates coverage under the Policy. Ambiguity surrounding the definition of "claim" should have been construed for the Harts and in favor of coverage.

---

17. These three acts of negligence involved two separate insureds and resulted in the allegation of a single death. *St. Paul Fire,* 2 Haw.App. at 595, 637 P.2d at 1146.

18. The term "claim" also includes "counterclaim" within its definition." *Black's Law Dictionary* 282 (9th ed. 2009) (defining "claim" and referring to the definition of "counterclaim"); *id.* at 402 (defining "counterclaim" as "[a] claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim.").

458

Ultimately, because "claim" is not defined in the Policy, and because the State's allegations twice sought to establish the State's present escheat interest in the Harts' insured property and twice requested affirmative relief regarding its present escheat interest, the State's reservation fell within the broad, common definition of "claim" as covered under the Policy. The ICA erred in construing this ambiguity in favor of TICOR and by concluding that the State failed to assert an escheat claim.

## 2. The insurer's duty to defend arises at the mere potential of coverage under a policy.

■■■ The obligation of an insurer to defend an insured is distinct from the duty to provide coverage. *Pancakes of Haw., Inc. v. Pomare Prop. Corp.*, 85 Hawai'i 286, 291, 944 P.2d 83, 88 (1997). Indeed, an insurer's duty to defend is "broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage[ ]" under a policy. *Dairy Road*, 92 Hawai'i at 412, 992 P.2d at 107 (quoting *Sentinel*, 76 Hawai'i at 287, 875 P.2d at 904) (emphasis in original). This obligation to defend "rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense." *Id.* (quoting *Sentinel*, 76 Hawai'i at 287, 875 P.2d at 904) (emphasis in original, brackets omitted). Indeed, an insurer's duty to defend attaches when the language of the pleadings may plausibly be read as asserting a present claim, as is the case here.[19] "The duty to defend is not outcome-determined but merely

depends on a potential for coverage and is determined at the time suit is brought and not at the conclusion of litigation." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 327, 832 P.2d 733, 736 (1992) (internal quotation marks omitted) (quoting *First Ins. Co.*, 66 Haw. at 420, 665 P.2d at 653). Stated differently, "to have any effect at all," the duty to defend must be determined when the claim is initially asserted.[20] *Pancakes of Haw.*, 85 Hawai'i at 292, 944 P.2d at 89. Furthermore, "an insurer's ultimate non-liability should not free it from its concurrent [and distinct] contractual duty to defend." *First Ins. Co.*, 66 Haw. at 420, 665 P.2d at 653 (internal quotation marks omitted).

■■■ The insurer must employ "a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation[ ]" to determine whether the possibility of coverage under a policy exists. *Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co. Ltd.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Sentinel*, 76 Hawai'i at 287, 875 P.2d at 904 (quoting *Trizec Prop., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 812 (11th Cir.1985)) (brackets omitted).

■■■ In summary, the pleadings underlying the Harts' tender reveal that TICOR had a duty to defend the Harts, determined at the time the State asserted the escheat claim because, at that time, the language of the State's answer, answer to amended petition,

19. We do not condone any attempt to create an insurer's duty to defend by "artful pleading" of a claim or defense which has no legitimate basis in the facts alleged or issues raised in the pleadings. In *Dairy Road*, this court expressly intended to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent, conduct." *Dairy Road*, 92 Hawai'i at 417, 992 P.2d at 112 (approvingly citing the primary purpose in *Hawaiian Ins. & Guar. Co. v. Brooks*, 67 Haw. 285, 686 P.2d 23 (1984) (overruled on other grounds) and *Hawaiian Ins. & Guar. Co. v. Blanco*, 72 Haw. 9, 804 P.2d 876 (1990) (overruled on other grounds) and noting "[w]ith respect to the facts

as alleged within the four corners of a complaint, we do not disturb the *Brooks/Blanco* analysis[ ]"). Stated differently, "when the *facts* alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend." *Id.* (emphasis in original).

20. In *Pancakes of Haw.*, this court explained the reasoning supporting an insurer's broad duty to defend when extending and applying such reasoning to contract indemnity clauses. *See* 85 Hawai'i at 292–93, 944 P.2d at 88–89.

and affirmative prayers for relief, plausibly asserted a present claim of escheat, and TICOR conceded that a claim of escheat is not excluded from coverage under the Policy. We agree with the Harts that "[o]nce the possibility of coverage triggered the duty to defend, TICOR had the duty to defend, regardless of whether the allegations were 'groundless, false, or fraudulent' or whether some of the claims '[fell] outside of the policy's coverage.'" The fact that the State ultimately clarified that it was "not pursuing any claim of escheat to the State[]" did not excuse TICOR from its initial duty to defend. *See Hart*, 2011 WL 2938210, at *1 n. 2. Considering the specific and unique facts of this case, the ICA erred in concluding that TICOR did not have a duty to defend the Harts. *Id.* at *1.

▪ Additionally, we disagree with the ICA's conclusion that the State's escheat claim did not trigger TICOR's duty to defend the Harts because the State failed to follow the proper procedure for bringing an escheat claim under HRS § 665-1 (1993). *Id.* By so concluding, the ICA improperly tied TICOR's duty to defend to the sufficiency or merits of the State's pleading. Put differently, the ICA erroneously made TICOR's duty to defend contingent upon the outcome or ultimate sufficiency of the State's escheat claim.

### B. *The ICA erred in affirming the district court's award of attorneys' fees and costs to TICOR.*

The district court awarded TICOR attorneys' fees and costs under HRS § 607–14 (Supp.2010) [21] and HRS § 607–9 (1993) [22] as the prevailing party. Because we are vacating the ICA's judgment and reversing the judgment of the district court, we vacate the district court's award of attorneys' fees and costs to TICOR since the Harts are now the prevailing party.

## IV. *CONCLUSION*

For the reasons stated herein, we hold that TICOR owed a duty to defend the Harts under the Policy against the State's escheat claim and prayer for affirmative relief. Accordingly, we vacate the ICA's judgment, and reverse the judgment of the district court in favor of TICOR. We also vacate the district court's award of attorneys' fees and costs to TICOR. We remand the case to the district court with instructions (1) to enter judgment in favor of the Harts, and (2) to determine an award of attorneys' fees and costs to the Harts, with the specific instruction that the Harts' award be limited to the period of time from the Harts' tender of defense to TICOR until the escheat claim reached resolution through written court order.[23]

---

21. HRS § 607–14 provides, in relevant part:
 In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.
 . . .
 The above fees provided for by this section shall be assessed on the amount of the judg-

 ment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment. . . .
 HRS § 607–14 (Supp.2010).

22. HRS § 607–9 provides:
 No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
 All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.
 HRS § 607–9 (1993).

**23.** In oral argument, the Harts' counsel argued that "the duty to defend continues through the resolution of the claim including any possible appeal, so the fees cut off at the resolution of the claim including final judgment and any possible appeal." We hold that the Harts are entitled to attorneys' fees and costs related to their covered escheat claim beginning with the Harts' tender of defense to TICOR on November 7, 2005, and ending upon the Land Court's final written resolution of the State's escheat claim in its December 5, 2007 order.